GEORGE W. REYNOLDS, and others,

*vs.*

CITY OF WATERVILLE, and others.

Kennebec.    December 26, 1898.

*Constitutional Law.    Municipal Debts.    Spec. Laws, 1897, c. 523;    Constitution of Maine, Amendment XXII.*

By Article XXII of the Amendments to the Constitution of Maine, it is provided as follows: "No city or town shall hereafter create any debt or liability, which singly, or in the aggregate with previous debts or liabilities, shall exceed five per centum of the last regular valuation of said city or town; *provided, however*, that the adoption of this article shall not be construed as applying to any fund received in trust by said city or town, nor to any loan for the purpose of renewing existing loans or for war, or to temporary loans to be paid out of money raised by taxation, during the year in which they are made."

The court construes the act of the legislature (ch. 523 laws of 1897), incorporating the City Hall Commission of Waterville, as imposing additional indebtedness and liability on the city while its municipal debt is already beyond the constitutional limit, the commission being regarded as merely the agent or trustee of the city, and therefore declares such act unconstitutional and void.

A proper remedy of tax-payers to prevent proceedings by the city in pursuance of the act is in equity by injunction.

The city's own valuation, and not that made by the State Board of Commissioners, is the test by which to ascertain the amount of indebtedness which settles the constitutional limit.

The court expresses a willingness, in a proper case, to adopt the rule adopted by many authorities, which allows a municipal corporation, although its indebtedness has reached the constitutional limit, to make time contracts, in order to provide for certain municipal wants which involve only the ordinary current expenses of municipal administration, provided there is to be

no payment or liability until the services be furnished, and then to be met by annual appropriations and levy of taxes; so that each year's services shall be paid for by each year's taxes.

ON REPORT.

Bill in equity, heard on bill, answers and proof. The bill was brought by the plaintiffs, being twelve taxable inhabitants of the city of Waterville, against the City, the City Hall Commission, created by special laws of 1897, c. 523, and M. C. Foster & Son, who were alleged to have contracted with the City Hall Commission for the erection of a city building in the city of Waterville.

The act of the Legislature which came under consideration by the court in this case provides, among other things, (Sect. 1) that the mayor of Waterville for the time being, and four other persons named "are hereby created a body corporate and politic, by the name of the City Hall Commission, and as such shall have a common seal and power to sue and be sued;" that vacancies in the City Hall Commission caused by expiration of term, or otherwise, shall be filled by the city council of Waterville; that the city treasurer of Waterville shall be ex officio treasurer of the City Hall Commission; that (Sect. 2) the powers and duties of the City Hall Commission shall be those heretofore conferred upon the new City Hall Commission by the city council of Waterville, and it "shall have any other powers and perform any other duties which may hereafter from time to time be voted and conferred upon it by the city council of Waterville;" that (Sect. 3) "the City Hall Commission are hereby authorized to issue the bonds of the corporation . . . . at such rates and on such times as may be approved by the city council, and for such an amount as the city council may approve, not to exceed seventy-five thousand dollars; and the proceeds of the sale of said bonds shall be exclusively used for the purpose of erecting a city building in the city of Waterville;" that (Sect. 4) "the city of Waterville is hereby authorized when its city council so votes, to convey to the City Hall Commission . . . . in trust, its present city hall building lot in said Waterville, together with all buildings, additions and improvements existing on said city hall lot at the time of said conveyance, for the sole pur-

pose of securing the payment of the bonds issued under the provisions of section three of this act and for no other purpose;" that the Commission shall hold said property in trust for said purposes; that the lot and all improvements, and all buildings which shall be erected thereon by virtue of the powers of this act shall be holden for the payment of said bonds and coupons, which shall constitute a first lien thereon, which lien shall not be impaired; that (Sect. 5) in case of default in the payment of bonds or coupons, any holder may have remedy by bill in equity for the benefit of himself as well as for the benefit of other holders; and that the lien may be enforced by appointment of receiver, and sale, according to the usual practice in equity proceedings; that (Sect. 6) " the city of Waterville is hereby authorized and required to raise annually by taxation such sum or sums as may be necessary to pay all expenses for repairs, insurance and management of said city building in a sum equal to the annual interest on the bonds issued and outstanding," and may exempt the trust property from taxation; that, (Sect. 7) in consideration of the rental, the city shall become the tenant of the building under such provisions and directions as the city council may vote from time to time, with power to sublet parts of the building; that the revenue derived from the building shall be invested in a sinking fund, to be used for the purchase of the bonds and for no other purpose; that the city may raise by taxation, or other means, such other sums from time to time as may be voted by the city council to be added to the sinking fund or used in the purchase of bonds; that (Sect. 9) the city may assume the indebtedness represented by the bonds whenever it can constitutionally, and whenever all of such indebtedness is thus assumed, or the bonds and coupons are paid, the property shall be reconveyed; that (Sect. 10) the Commission shall not sell or mortgage the property; that (Sect. 11) all duties and powers necessary to the erection and care of the city building, not conferred upon the Commission by existing ordinance or vote of the city or by this act, shall be vested in the city council; that the city and not the Commission shall be liable for damages, in the erection and proper care of the buildings; that vacancies occurring

in said City Hall Commission shall be filled by the city council of Waterville; that (Sect. 13) the act shall take effect whenever approved by a majority vote of the votes cast by the legal voters of the city.

The defendants demurred to the bill, and also answered.

From the bill, answer, evidence and admissions, may be gathered the following facts, about which the parties were not in dispute.

1.   That the indebtedness of the city of Waterville exceeds, by more than five thousand dollars, "five per centum of the last regular valuation of said city."

2.   That on the third day of June, 1896, the city council of Waterville created the "New City Hall Building Commission," which was then and afterwards authorized and empowered to "advertise for plans for a new city building," "to receive bids for a new city building," to employ an architect to prepare suitable plans and working specifications for the proposed building, "to advertise for bids by contractors for the construction of a new city building, according to plans drawn by George G. Adams or others," with full power and authority to close a contract or contracts; to "excavate for a foundation;" that the commission, by authority of the city, enlarged the city hall lot by the purchase of other lands, and caused the whole to be prepared for the erection of a city building, and contracted with an architect.

3.   That on the fifteenth day of May, 1897, the City Hall Commission, incorporated by Chap. 523 of the Private and Special Laws of 1897, and one of these defendants, contracted with M. C. Foster & Son, other defendants, for the erection by them of a city building, under the provisions of the foregoing act, for the sum of $61,737, and that the Fosters intend to build the city building according to this contract.

4.   That the city building as contracted to be built, will contain among other rooms, a large hall which can be used as a public opera or public amusement hall, but it is admitted that "the use of said city hall will go primarily for the city, and secondarily as a

place of amusement." The hall will be furnished with opera chairs, stage scenery, etc.

5. That chap. 523 of Private and Special Laws of 1897, has been duly accepted by a majority vote of the voters of Waterville.

6. That by authority of the city council, the city hall building lot, additions and improvements, have been conveyed, in trust, to the City Hall Commission, under the provisions of its charter.

7. That the city council of Waterville has authorized and directed the City Hall Commission to issue its bonds, for the purposes specified in its charter, not to exceed seventy-five thousand dollars, and that the City Hall Commission intends to issue such bonds, or as much as may be necessary.

8. That the city intends to become a tenant of the city building, when erected, under the provisions of said act.

The complainants charged, and in argument claimed, that the act of incorporating the City Hall Commission, as a whole, is " an evasion and legal artifice" to enable the city to increase its debts and liabilities far beyond the constitutional debt limit created by the 22nd amendment of the constitution, and is therefore unconstitutional and void; and specifically, (Waterville being already in debt beyond the limit) that the provisions of the act authorizing the conveyance of the city hall lot and other property to the commission, in trust, directing the indefinite, future, annual assessment of taxes for rental, repairs, insurance and care of the city building, and creating a sinking fund out of the income of the city building, are each and all of them means to enable the city to indirectly create debts or liabilities, beyond its constitutional limit, and are therefore unconstitutional.

The complainants further asserted that, in case of default of payment of the bonds, in the manner provided by the special statute, the city will ultimately be liable for their payment.

The complainants prayed that the contract between the City Hall Commission and the Fosters, the act incorporating the City Hall Commission, and the several votes of the city council, may all

be declared illegal and in contravention of the constitution of Maine.    Also that the City Hall Commission be ordered to reconvey to the city of Waterville the city hall building lot, and the additions and improvements.    Also that the defendants be enjoined from performing the stipulations of the contract to build a city building and from making any contract for the erection of the city building and lease thereof to the city of Waterville, and from issuing the bonds authorized by the act and by the vote of the city council.

*E. F. Webb and J. W. Symonds*, for plaintiffs.

Jurisdiction in equity:    *Carleton* v. *Newman*, 77 Maine, 408 ; *Crampton* v. *Zabriski*, 101 U. S. 610, (Taxpayers may maintain suit) *Sackett* v. *City of New Albany*, 88 Ind. 473, (45 Am. Rep. 467) ; 1 Pom. Eq. § 265.

22d Amendment to Const.:    To have liberal construction.  *Law* v. *People*, 87 Ill. 385.    Forbids implied as well as expressed indebtedness.    *Litchfield* v. *Ballou*, 114 U. S. 190 ; *Buchanan* v. *Litchfield*, 102 U. S. 278; *Lake County* v. *Rollins*, 130 U. S. 662; *Lake County* v. *Graham*, Id. 674 ; *McPherson* v. *Foster*, 43 Iowa, 48, (22 Am. Rep. 215.)

The last regular valuation means that of the city assessors : *Buchanan* v. *Litchfield*, 102 U. S. 288.

Both bonded and floating indebtedness prohibited :    *People* v. *May*, 9 Colo. 80 ; *Law* v. *People*, 87 Ill. 385 ; *French* v. *Burlington*, 42 Iowa, 614; *Lake County* v. *Rollins*, 130 U. S. 662 ; (Current expenses) *Prince* v. *Quincy*, 105 Ill. 138, (44 Am. Rep. 785) ; *Sackett* v. *New Albany*, 88 Ind. 473, citing *Springfield* v. *Edwards*, 84 Ill. 626 ; (Water supply and lighting) *State* v. *Atlantic City*, 49 N. J. L. 558 ; *Prince* v. *Quincy*, supra ; *Salem Water Co.* v. *Salem*, 5 Ore. 30 ; *Buchanan* v. *Litchfield*, supra ; *Cranch* v. *Davenport*, 36 Iowa, 402 ; (Future Contracts) *Law* v. *People*, supra ; *Davenport* v. *Kleinschmidt*, 6 Mont. 502 ; *Wallace* v. *San Jose*, 29 Cal. 180 ; *Niles Water Works* v. *Niles*, 59 Mich. 311 ; *Springfield* v. *Edwards*, supra ; *Culbertson* v. *Fulton*, 127 Ill. 30 ; *Coulson* v. *Portland*, Beady, (U. S.) 481 ; *Sackett* v. *Davenport*, 34 Iowa, 208 ; *City of Erie*, 91 Pa. St. 398; (grading

streets) *French* v. *Burlington*, supra; (County court house) *Hebbard* v. *Ashland County*, 55 Wis. 145; *Crooke* v. *Earl*, 87 Mo. 246; (wagon road) *People* v. *Johnson*, 6 Cal. 499.

Validity of past indebtedness: *McPherson* v. *Foster*, 43 Iowa, 48; *Millerstown* v. *Frederick*, 114 Pa. St. 435; *City of Valparaiso* v. *Gardiner*, 97 Ind. 1, (49 Am. Rep. 416). Opera House: *Thorndike* v. *Camden*, 82 Maine, 39, and cases.

Stat. 1897, c. 523: An evasion of the constitution, and what the law forbids to be done directly cannot be done indirectly. *Jose* v. *Hewitt*, 50 Maine, 248; *Magdalen College case*, 11 Coke, 79; *Carleton* v. *Newman*, 77 Maine, 408; *Buchanan* v. *Litchfield*, supra; *Board of Liquidation* v. *McComb*, 92 U. S. 531; *Fletcher* v. *Peck*, 6 Cranch, 87; *Marbury* v. *Madison*, 1 Cranch, 137; *Henderson* v. *Mayor*, 92 U. S. 259; *Green* v. *Biddle*, 8 Wheat. 1; *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Township of Doon* v. *Cummins*, 142 U. S. 366.

*H. M. Heath and C. L. Andrews; (Harvey D. Eaton*, city solicitor, for Waterville; *W. C. Philbrook*, for M. C. Foster & Son; with them) for defendants.

Purpose lawful: It cannot be controverted that it is a legitimate municipal purpose for a city to erect or rent a building containing, as limited by the municipal records put in evidence and the terms of the special act, "rooms and apartments for all city officers, vaults for the city records, rooms for a public library, an assembly hall and an armory for the militia." The words "City Building" as used in the special act define themselves. Such a building has been often said by the courts to be a necessity. *State* v. *Haynes*, 72 Mo. 377; *Beaver Dam* v. *Frings*, 17 Wis. 398; *People* v. *Harris*, 4 Cal. 9; *Greeley* v. *People*, 60 Ill. 20; *Eastman* v. *Meredith*, 36 N. H. 295; *Spaulding* v. *Lowell*, 23 Pick. 74; *French* v. *Quincy*, 3 Allen 9; *Walton* v. *New Bedford*, 131 Mass. 23; *Stetson* v. *Kempton*, 13 Mass. 278; *Torrent* v. *Muskegon*, 47 Mich. 115; *Mayor* v. *McWilliams*, 67 Ga. 106; *Halbut* v. *Forrest City*, 34 Ark. 246; *Camden* v. *Camden Village Corporation*, 77 Maine, 530.

The courts have often held that the people are the sole judges of the necessity, and that the court will not disturb the exercise of such discretion. *Greeley* v. *People*, 60 Ill. 20 ; *Chambers* v. *St. Louis*, 29 Mo. 543 ; *Spaulding* v. *Lowell*, 23 Pick. 74 ; *Torrent* v. *Muskegon*, 47 Mich. 115, (41 Am. Rep. 715).

The right to erect carries with it necessarily the right to lease a suitable building. So held in *Wade* v. *New Berne*, 77 N. C. 460 ; *People* v. *Green*, 64 N. Y. 499 ; *Chambers* v. *St. Louis*, 29 Mo. 543 ; *Eastman* v. *Meredith*, 36 N. H. 295.

No special act was needed to authorize the city of Waterville to lease a building for municipal purposes. *People* v. *Harris*, 4 Cal. 9. The authority is inherent. *People* v. *Green*, 64 N. Y. 499.

Commission a lawful corporation : *Lester* v. *Georgia*, 90 Ga. 802 ; *Hinsdale* v. *Larned*, 16 Mass. 65 ; *People* v. *Salomon*, 51 Ill. 37 ; *Howard* v. *St. Clair Drainage District*, 51 Ill. 130 ; *People* v. *Mayor of Chicago*, 51 Ill. 17. (Road Districts.) *Butz* v. *Kerr*, 123 Ill. 659 ; (Drainage District.) *Owners of Land* v. *People*, 113 Ill. 304 ; (Commissioners of Public Ponds.) *St. Louis* v. *Shields*, 62 Mo. 247 ; (Mobile School Commission.) *Horton* v. *Com'rs*, 43 Ala. 598 ; (Park Commission.) *Kelly* v. *Minneapolis*, 30 L. R. A. 281 ; *Orvis* v. *Park Com'rs*, 88 Iowa, 674.

In *Wilson* v. *Sanitary District*, 133 Ill. 443, (36 Am. & Eng. Corp. Cases, 340,) the question is discussed at length. Unincorporated commissioners were simply agents of the city. *Orvis* v. *Park Commissioners*, 88 Iowa, 674 ; *West Chicago Park Commissioners* v. *Chicago*, 152 Ill. 392.

Bonds not city debt : *Gibbons* v. *R. R. Co.*, 36 Ala. 410 ; *Powell* v. *Madison*, 107 Ind. 106 ; *Finnegan* v. *Vaughan*, 54 Minn. 331.

Deed valid : *Weymouth & B. Fire Dist.* v. *Co. Com.*, 108 Mass. 142 ; *Whiting* v. *Stow*, 111 Mass. 214 ; *Kingman, Petitioner*, 153 Mass. 566 ; *Meriwether* v. *Garrett*, 102 U. S. 472 ; *Mayor of Baltimore* v. *State*, 15 Md. 376.

The Legislature can always authorize a municipality to dispose of its property as seems in consonance with the public welfare. *People* v. *Wren*, 4 Scam. (Ill.) 269 ; *County of Richland* v. *Law-*

*rence*, 12 Ill. 1; *Trustees* v. *Talman*, 13 Ill. 27; *Rock Island* v. *Sage*, 88 Ill. 582; *Supervisors* v. *People*, 110 Ill. 511; *Harris* v. *Supervisors*, 105 Ill. 445; *Wetherall* v. *Devine*, 116 Ill. 631; *Fort Wayne* v. *R. R. Co.*, 132 Ind. 558; *Coyle* v. *McIntire*, 7 Houston, 44.

Lease is honest: *Portland* v. *Portland Water Co.*, 67 Maine, 135; *Grant* v. *Davenport*, 36 Iowa, 396; *Utica Water Co.* v. *Utica*, 31 Hun, 431.

Rent not a liability: *Smith* v. *Dedham*, 144 Mass. 177; *Crowder* v. *Sullivan*, 128 Ind. 486, (13 L. R. A. 647); *Grant* v. *Davenport*, 36 Iowa, 396; *Appeal of Erie*, 91 Pa. St. 398; *Wade* v. *Borough*, 165 Pa. St. 497; *Brown* v. *Corry*, 175 Pa. St. 528; *Jacksonville R. R. Co.* v. *Jacksonville*, 144 Ill. 567; *New Orleans Gas Co.* v. *New Orleans*, (Louisiana, 1889,) 29 Am. & Eng. Corp. Cases, p. 247); Simonton on Municipal Bonds, 60, 61; *Walla Walla Water Co.* v. *Walla Walla*, 60 Fed. Rep. 957; *People* v. *May*, 9 Colo. 404; *Dively* v. *Cedar Falls*, 27 Iowa, 227; *Corpus Christi* v. *Woesner*, 58 Texas, 462; *Laycock* v. *Baton Rouge*, 38 La. Ann. 475; *Kerlie* v. *South Bend*, 76 Fed. Rep. 921; *Weston* v. *Syracuse*, 17 N. Y. 110; *Territory* v. *Oklahoma*, 37 Pac. Rep. 1094; *Porter* v. *Douglass*, 87 Mo. 239; *Lott* v. *Mayor*, 84 Ga. 681; *French* v. *Burlington*, 42 Iowa, 614; *Lehigh Coal Co. Appeal*, 112 Pa. St. 360; *Rice* v. *Keokuk*, 15 Iowa, 579; *Dyer* v. *Brenham*, 65 Tex. 526; *Carter* v. *Sec'y of State*, (S. Dak.) 24 L. R. A. 734; *McBean* v. *Fresno*, 112 Cal. 159, (53 Am. St. Rep. 191; also 13 L. R. A. 794); *Carlyle Water Co.* v. *Carlyle*, 140 Ill. 445; *Saleno* v. *Neosho*, 127 Mo. 627; *State* v. *McAuley*, 15 Cal. 429; *People* v. *Arguello*, 37 Cal. 524; *East St. Louis* v. *Gas Co.*, 98 Ill. 415, (38 Am. Rep. 97); *Valparaiso* v. *Gardner*, 97 Ind. 1, (49 Am. Rep. 419); *Utica Water Co.* v. *Utica*, 31 Hun, 431; *Davenport* v. *Kleinschmidt*, (Monta.) 16 Am. & Eng. Corp. Cases, 301; *Prince* v. *Quincy*, 105 Ill. 138, (44 Am. Rep. 785; also 2 Am. & Eng. Corp. Cases, 66); *Niles Water Works* v. *Niles*, 59 Mich. 311, (11 Am. & Eng. Corp. Cases, 299); *State* v. *Atlantic City*, (N. J. 1877) 17 Am. & Eng. Corp. Cases, 592; *Beard* v. *Hopkinsville*, 95 Ky. 239; *Salem Water Co.* v. *Salem*, 5 Ore. 29,

(49 Am. Rep. 416); *Sackett* v. *New Albany*, 88 Ind. 473, (45 Am. Rep. 467; also 2 Am. & Eng. Corp. Cases, 85); *Council Bluffs* v. *Stewart*, 51 Iowa, 385; *Law* v. *People*, 87 Ill. 385; *Fuller* v. *Chicago*, 89 Ill. 282; *Lake Co.* v. *Rollins*, 130 U. S. 662; *Spiller* v. *Parkersburg*, 35 W. Va. 605; *Read* v. *Atlantic City*, 49 N. J. L. 569.

*Read* v. *Atlantic City*, 49 N. J. L. 569, in fact furnishes a rule for reconciling all the cases. The court says the true rule is between the extremes. That where the money to be paid upon such contracts is provided for, and to be raised by taxation upon some fixed and definite scheme, such contracts are not within the constitutional restriction; that where there is no legislative scheme positively prescribing that the sum to be due shall be raised by taxation and appropriated as needed, then such contracts do not increase the debt within the meaning of the constitutional prohibition.

City not suable: There can be no "debt or liability," unless under, at least, some contingencies an action can be brought against the city and judgment recovered.

This reliance of the bondholders upon the power of the Commission to compel the city to levy a tax to meet the annual rental, and to have it in the treasury at the end of each year to discharge the rental due for the preceding year, robs the case of all pretense of there being any debt or liability against the city. There can be no debt or liability unless the obligation runs against the city as a whole. Where a special tax is to be assessed to meet the agreed price and the obligee looks to that particular fund, there is no debt or liability. *People* v. *May*, 9 Colo. 404; *Fuller* v. *Chicago*, 89 Ill. 282. If a tax is authorized and set apart to meet the contract, no debt is created. *State* v. *Pacheco*, 27 Cal. 175. Obligations payable from a particular fund and for which the fund only and not the municipality is liable are not within the constitutional restriction. *Quill* v. *Indianapolis*, 124 Ind. 292, (7 L. R. A. 681); *Strieb* v. *Cox*, 111 Ind. 299; *Baker* v. *Seattle*, 2 Wash. 576; *Davis* v. *Des Moines*, 71 Iowa, 500. For illustrations see: (Paving certificates.) *Tuttle* v. *Polk*, 92 Iowa, 433; (Betterment assess-

ments.) *Atkinson* v. *Great Falls*, 16 Mont. 372; (Park certifi-
cates.) *Kelly* v. *Minneapolis*, 30 L. R. A. 281. In such cases, it
is essential that all right of action against the city as a whole is
clearly surrendered. *State* v. *Fayette Co. Com'rs*, 37 Ohio St.
526 ; *Kimball* v. *Grant Co. Com'rs*, 21 Fed. Rep. 45.

Future city councils bound: It is no answer to suggest that
future city councils are not required to order the rental tax. A
contract that is fair, just and reasonable, and prompted by the
necessities of the situation or advantageous to the municipality will
not be construed as an unreasonable restraint upon the power of
succeeding boards. *McBean* v. *Fresno*, (Cal.) 13 L. R. A. 794,
and cases above cited.

Purpose of constitutional limit: Cooley Const. Lim. (5th ed.)
78, 79.

Adequate remedy at law: *Searle* v. *Abraham*, 73 Iowa, 507;
*Dodd* v. *Hartford*, 25 Conn. 237 ; *Sheldon* v. *School Dist.* 25 Conn.
223; *Oregon* v. *Lord*, 1 L. R. A. 473; *Dow* v. *Chicago*, 11 Wal-
lace, 108; *State R. R. Tax Cases*, 92 U. S. 575; *Moers* v. *Smed-
lay*, 6 Johns. Ch. 27; *Sellinger* v. *White*, 9 Neb. 399; *Altgett* v.
*San Antonio*, 81 Tex. 446.

No equity jurisdiction: *Loud* v. *Charleston*, 99 Mass. 208;
*Carleton* v. *Salem*, 103 Mass. 141; *Fiske* v. *Springfield*, 116 Mass.
88; *Prince* v. *Boston*, 148 Mass. 285; *Steele* v. *Municipal Signal
Co.*, 160 Mass. 36; *Johnson* v. *Thorndike*, 56 Maine, 32. In the
last case the court say that there are two classes of cases, and only
two, where the court is authorized to interfere; where the city or
town attempts to raise or pay money, or pledge its credit for a pur-
pose not authorized by law, and where any agent or officer thereof
attempts to pay out the money of such city or town without
authority.

Laches: *Parsons* v. *Northampton*, 154 Mass. 410; *Tash* v.
*Adams*, 10 Cush. 252; *Freeland* v. *Hastings*, 10 Allen, 575; *Frost*
v. *Belmont*, 6 Allen, 156; *Hurd* v. *Lynn*, 1 Allen, 103; *Fuller* v.
*Melrose*, 1 Allen, 166; *Babbitt* v. *Savoy*, 3 Cush. 530.

SITTING:   PETERS,   C.  J.,   EMERY,   HASKELL,   WISWELL,
STROUT, JJ.   SAVAGE, J., dissenting.   FOSTER, J., did not
sit being related to one of the parties.

PETERS, C. J.   The constitution of this State provides that no
city or town shall create any debt or liability, which singly, or in
the aggregate with previous debts or liabilities, shall exceed five
per centum of the last regular valuation of said city or town.

In interpreting this constitutional provision we believe we
would be willing to adopt the middle doctrine on which some of ·
the authorities stand, called by counsel for respondents the rule of
reconciliation, which allows a municipal corporation, although its
indebtedness has already reached the constitutional limit, to make
time contracts in order to provide for certain municipal wants
which involve only the ordinary current expenses of municipal
administration, provided there is to be no payment or liability
until the services be furnished, and then to be met by annual
appropriations and levy of taxes; so that each year's services
shall be paid for by each year's taxes; the scheme being variously
denominated in the cases as a business, or cash, or pay-as-you-go
transaction, and the like.

And we incline to the belief that, on this principle, a town or
city may contract for the use of a hall for a term of years, to be
used for strictly municipal purposes, provided the principle be
fairly applied in any case and not be abused; not however allow-
ing a hall to be hired for the purpose of subletting either the
whole or any part of it.   Municipal necessities are only to be
regarded.

But under the guise of the principle above stated, a municipal-
ity should not be allowed to pass off, as an agreement for renting
a hall, an agreement which is not really entered into strictly for
such purpose.   And we feel that the transaction here in question
must be repudiated upon that ground.   The transaction has in some
respects the semblance of a lease, but it is a misnomer to call it
such.   It is attempted to make it one thing in form, while in reality
it is something else.   It is apparent enough that the city is to have

not merely the use of the building to be erected, but the building itself. It is not to get an annual service to be paid for out of annual revenues, but the city is to acquire a city hall presently, to be paid for by assessments of taxes for the long period of thirty years. It is a purchase.

It would not be a misinterpretation to say that the city of Waterville, instead of leasing the property, undertakes to purchase or pay for it on the installment plan, and that what are called rentals for the hall are merely partial payments on its cost.

In *Gross* v. *Jordan*, 83 Maine, 380, the head-note is as follows: " Writing an agreement in the form of a lease does not alter the character of an instrument which by its more essential terms discloses itself to be a conditional sale of personal property." The facts of that case showed that by a paper called a lease, and sprinkled with phrases appropriate to a lease, one person received a wagon of another, agreeing to pay fifteen dollars a month for its use, and when the sums so paid amounted to one hundred and sixty-five dollars and interest thereon, such party was to receive title to the wagon. The court said : " This paper, which calls itself a lease, is a conditional sale of property, the title passing when the full price shall have been paid. Its own terms are the true test of the nature of a contract, whatever its framers may denominate it." That case was followed by other cases in this state where agreements to convey pianos and sewing machines were attempted to be passed off and construed as leases, but the attempts did not prevail.

We need not dwell on this point, however, because our opinion is that the true nature of the transaction is rather the hiring of money by the city upon the security of city property through the intervention of a trustee, the title to the property being and remaining in the city from the beginning to the end, subject only to the lien upon it in favor of bondholders for money to be lent. This kind of agreement is so clearly and satisfactorily explained by Pomeroy in his Equity Jurisprudence, in § 995, that we here quote the entire section, as follows: " Deeds of Trust to Secure Debts.— A special form of trust for the benefit of creditors peculiar to the

law of this country, has become quite common in several of the states, and requires a brief description. A 'deed of trust to secure a debt' is a conveyance made to a trustee as security for a debt owing to the beneficiary—a creditor of the grantor, and conditioned to be void on payment of the debt by a certain time, but if not paid the trustee to sell the land and apply the proceeds in extinguishing the debt, paying over any surplus to the grantor. The object of such deeds is, by means of the introduction of trustees, as impartial agents of the creditor and debtor, to provide a convenient, cheap and speedy mode of satisfying debts on default of payment. A distinction, however, should be noted in this connection between unconditional deeds of trust to raise funds for the payment of debts, and deeds of trust in the nature of mortgages, the former being absolute and indefeasible conveyances for the purposes of the ·trust, while the latter are conveyances by way of security, subject to a condition of defeasance. In many states deeds of trust to secure debts are much favored, either on account of the intervention of disinterested third parties, whose position as trustees secures to the debtor fair dealing, or the absence of any necessity for the intervention of the courts ; though in some states they are required to be judicially foreclosed, and are therefore of no practical advantage. Indeed, in a majority of the states this form of security has come into general, and, in some instances, universal use. An intimate relation exists between deeds of trust to secure debts and mortgages, especially mortgages containing powers of sale ; in fact, the former are generally considered as being in legal effect mortgages. Where a mortgage is regarded as a conveyance of the legal estate, a deed of trust can be no less a conveyance of the legal estate, and where a mortgage is considered as but a mere lien, a deed of trust is generally considered as nothing more than a lien. A reconveyance, as a general rule, is not necessary on payment of the debt secured by a deed of trust, satisfaction being entered in the margin, as in the case of a mortgage. Statutes relating to the recording of mortgages embrace deeds of trust, without special mention of the latter, as also do those relating to powers of sale contained in mortgages. While a mortgage with

power of sale may be assigned, in the absence of words ·restricting an assignment, and the power of sale passes thereby to the assignee, a deed of trust to secure a debt, being a confidence reposed, cannot be delegated, and no assignment is possible, without an express and positive permission in the deed.   The duties of the trustee of a deed of trust require the utmost good faith and impartiality as regards both the debtor and creditor. · He is personally liable in a suit at law for damages to the party aggrieved for a failure to use reasonable diligence, or an abuse of his discretionary powers; and a sale may be enjoined or set aside at the instance of the injured party.   It is not necessary that the person who is to execute the power in a trust deed should join in the deed, or execute any formal writing showing his acceptance of the trust; nor is it necessary that the beneficiary should signify his assent by any formal writing, for his assent is presumed since the deed is for his benefit. Where a trustee has accepted the trust, he cannot renounce it without the consent of the beneficiary, or of a court of equity; and he may be compelled to discharge the trust."

The statutory commission in the case before us was very little more than a passive trustee, and would be entirely such when the bonds should become paid.   The trust at all times was to be fastened upon the estate rather than upon the trustee, and a conveyance of the estate by the city itself, after payment of the debt, could not be repudiated by the trustee.   *Sawyer* v. *Skowhegan*, 57 Maine, 500; Pom. Eq. Juris. § 988.   So there was no need of inserting in the act that the commission should reconvey to the city.   The learned counsel for the respondents admits that an equity of redemption reposed in the city.   When therefore the debt should become paid, the new city hall would be absolutely the property of the city.

There appears upon the brief of respondents this assertion: "In many ·cases, where commissioners, not being incorporated, have issued bonds, the courts have held that the city was liable, as the statutes properly construed required a holding that such unincorporated commissioners were simply agents of the city."   We can see no reason why an. incorporated commission may not act as an

agent or trustee just as well. An examination of the various sections of the legislative act reveals the fact that the commission was to be but the humble trustee of the city of Waterville, and the city itself the real owner of the property.

The commission as created by the act was naked of all authority excepting in just one respect, and that was as a formal medium through which the city could secure to the bondholders its debt. It will be seen all the way along that the commission is to be under the control of the city. The commission could sue and be sued, but it had no property and was subjected to no risks. It is entitled to have certain officers, and such others "as the city may direct." The city treasurer is to be the treasurer of the commission, but no new bond is required of him, and his sureties would not be responsible for his defaults, unless he be considered as acting for the city in what he does for the commission.

Section 2 declares that the powers and duties of the commission shall be controlled by the city. The commission is to have "such powers as are already conferred on it by the city," and it "shall have any other powers and perform any other duties which may hereafter from time to time be voted and conferred upon it by the city council." This does not sound much like the city being only a hirer and tenant of the property.

Section 3 imposes merely a clerical duty upon the commission, without the exercise of any discretionary power whatever. It is authorized to issue its bonds "at such rates and on such times and for such amounts as the city council may approve," not exceeding $75,000. By section 4 the city is authorized, "when its council so votes," to convey its city hall lot and all improvements thereon, presumably of great comparative value, to the commission for the sole purpose of securing the bonds before named and for no other purpose, the commission to hold the property and the new building to be erected thereon in trust as security therefor. These are all very commendable provisions, but only go to show the true relations which the city was to hold towards this city property, and indicating that the city was really to build the new hall as its own property. And does not the very mischief here arise which the

constitutional amendment was designed to prevent, the city thus getting their hall in the present, and having thirty years of continuous annual taxations with which to pay for it?    And it is further deducible from these and other clauses in the legislative act that the commission is virtually created and controlled by the city for its own purposes.    It is a corporation formed in blank, the city filling the blanks.

Section 5, in case of a default in the payment of bonds or coupons, authorizes bondholders to petition the court to enforce their lien by appointing a receiver for the sale and distribution of the property.    The petitition goes to the court, ignoring the commission.    Is there any doubt, should there be an excess of assets over indebtedness, that the balance would belong to the city as the debtor and owner?

By section 6, the city is "authorized and *required* to raise annually by taxation such sum as may be necessary to pay all expenses for repairs, insurance and management of said city building, when completed, together with an annual rental of said building in a sum equal to the annual interest on the bonds issued and outstanding . . . . and it shall be authorized to except said property from taxation while held in trust" . . . .    These are exactly the burdens which the city would necessarily bear as an owner of the property, and it is nothing less than affectation to style such payments rentals instead of payments of interest on the bonds.    It is indeed an ingenious provision to fix the so-called rental as just equivalent to interest on the bonds and the expenses, because it has a look of fairness on its face.    But the unfairness of this proposition is exposed when we find in section 7 a compensatory clause "authorizing and empowering the city to raise by taxation *or other means* such other sums as may be voted by the city council to add to the sinking fund to be provided for the purchase of the bonds and coupons issued under section 3 of this act."    It certainly cannot be pretended that these occasional taxations made from time to time are rentals or in the nature of rentals, for it is expressly provided that they shall swell the sinking fund for the payment of the bonds for the benefit of the city, and of course to

lessen the equitable if not legal indebtedness of the city. The language is to raise money by taxation *or other means*. What other means, unless it be by borrowing money? It is just here that the mischief may be apprehended which the constitution intends to prevent. The city could raise any amount of money at any time, under this general authority, without restriction as to amounts and without regard to conditions and circumstances. Absolute power is committed to the city by the legislature. It was just this kind of domination practiced by majorities and this improvidence of legislatures that the constitutional amendment was designed to restrain. If the act in question is to be deemed constitutional, in spite of the real plan transparent in it, why may not the city of Waterville be able, under a similar scheme of so-called rentals, to obtain for itself, by legislative permission, any other expensive scheme of improvements it might see fit to undertake?

Section 7 contains grotesque provisions: "In consideration of the rental as aforesaid the city of Waterville shall become the tenant of said city building when completed." If that shall be taken to mean that the city may remain in possession of its property without interference of bondholders, so long as it promptly pays the interest on the bonded indebtedness and keeps the property in good preservation and repair, that idea may be easily understood. If it means, however, that the city is to be a tenant and some other party a landlord, who is such landlord? It cannot be the constructors for they are to have their pay. Nor can it be the bondholders, for they have a lien only and must go to the court for the enforcement of any of their rights. It cannot be the Commission, for there are no words in the act investing them with any such authority. The landlord then cannot be other than the city itself, the city to be both landlord and tenant. The draftsman of the legislative act seems to have been in some confusion of mind on this point, evidently regarding the city as one party and its city council as another; especially when he declares in section 7 that the city shall become tenant "under such provisions and directions as the city council may vote from time to time." But it is of course difficult to keep up the landlord and tenant theory and

maintain consistency at the same time. Another inconsistent thing *on that theory* is that the city is to pay a full rent for the property as tenant and at the same time receive only partial benefit from it; turning all the earnings to be received from subletting the hall into a sinking fund for paying the bonds issued by the Commission.

Section 10 in effect affirms again that the commission shall have no power excepting to act as a medium through which the city may deal with the bondholders.

Certain provisions contained in section 11 are very important as disclosing the true nature of these transactions on the part of the city of Waterville, which section is as follows: "All duties and powers necessary to be exercised with respect to the erection of said city building and the care of the same after erection, not conferred on said City Hall Commission by any existing ordinance or vote of the said city of Waterville, or by the provisions of this act, shall be vested in the city council of Waterville. The city of. Waterville, and not said City Hall Commission shall be liable for all damages which said city would have been liable for in the erection of said building or the proper care of the same, had not the trust herein provided for been created."

By this section all duties and powers to be exercised in the construction and after-management of the hall, not already lodged in the commission by the city council or by the act, and we do not find that any are so lodged, are vested in the city itself. How inconsistent with the contention that the city is to be really a tenant paying rent! It may be admitted that it is provided it may be *called* a tenant. And so purely submissive an agent of the city is the commission to be, and so thoroughly and abjectly under its control, that it is to be protected during the construction of the hall, from all incidental risks, and the city is to assume all the same. What an unheard of proposition that a tenant is to pay a full price for his tenancy, and also be answerable for all injuries and misfortunes that may happen while the building he is to occupy is in process of construction!

But none of the features of this section are at all inconsistent

with the true nature of the transaction as the complainants claim it to be. They contend that the city is the actual party constructing the city hall; that it is to construct it itself with money to be hired upon the security of its city hall lot and all improvements and erections thereon, no other person or party contributing either money or liability thereto; that the form of the security is to be by a trust deed to a trustee upon a term of credit of thirty years; and that the means of repaying the money borrowed is by annual installments for the same period from money collected by annual taxes assessed for the purpose and occasional taxes in the meantime, and by earnings of the hall when used for other than municipal purposes; the city in the beginning having the title to the estate subject to the bonded indebtedness, and in the end free of all indebtedness or claim. This construction renders every section and clause of the act sensible, consistent and clear, while any other construction renders it illogical and inconsistent throughout.

It appears from the facts that at first the city made its contract directly with the builders, and finding it illegal, afterwards annulled that contract, intending to make the same contract over again indirectly through its incorporated agent or trustee. Here were two forms, but the embodiment in each case is the same. Where is there any essential difference between the two?

Section 12 provides that all vacancies in the membership of the commission shall be filled by the city council. It constitutes its own agent or trustee at its liking.

Section 13 provides for the city's acceptance of the act, and it accepted it. By its acceptance the city assents to all the taxations provided for, and to all the obligations imposed upon it by the act. The learned counsel for respondents sets up the contention that the true test of its liability is whether the city can or not be sued, arguing that the only remedy against it must be by mandamus. But is not mandamus a legal remedy of the most potential kind? And is there not a clear liability where mandamus can be maintained? After the city accepted the act, were the act free from the taint of unconstitutionality, would not the city be under a requirement for thirty years to make at least an annual assessment

of taxes whereby to make annual payments on its indebtedness? It is the only mode of enforcing collections from municipalities in the practice of many of the states. Does not such a requirement constitute a liability? And could not equitable if not legal proceedings be maintained against the city in some conditions that might arise? Can there be any doubt that the bondholders could by equity process enforce the obligation expressly assumed by the city to insure the building and keep it in repair; and why may they not also enforce the city's obligation to pay interest on the bonds either directly or by process in the name of its trustee? Or are all of these provisions merely a rope of sand?

It must be confessed that the act in question is a very dexterous attempt to accomplish one thing under the name of another thing,—as plausible as it is fallacious. It is error with truth's clothes on. And such erroneous propositions are not always easy to answer. Dr. Whately truly said of erroneous arguments:— "Although they are most unsubstantial, it is not easy to destroy them. There is not a more difficult feat known than to cut through a cushion with a sword." It is sure, however, if the plan here, intended as it is to avoid rather than uphold the law, shall prevail, the result as a precedent will shatter the constitutional amendment into pieces.

The respondents further contend that the remedy here is at law and not in equity. Such a decision would be a victory for respondents, because the city could control its common law obligations to suit the majority; while the constitutional amendment is for the protection of the minority against the majority.

We have no doubt that the city's own valuation, and not the valuation made by the State Board of Commissioners, is the test by which to ascertain the amount of indebtedness which settles the constitutional limit. If the city wants its valuation increased for one purpose let it increase it, by its own act, for all purposes.

Our conclusion is that the bill must be sustained, and that the deed to the City Hall Commission from the city of Waterville must be adjudged to be illegal, null and void; and that the contract between the Commission and the firm of M. C. Foster & Son

for erection of a city hall must also be adjudged to be illegal, null and void, and that an injunction must issue against all the respondents to prevent any enforcement of such contract.

> *Decree accordingly, and for costs against the city of Waterville.*

---

### DISSENTING OPINION.

SAVAGE, J.   I am unable to concur in the opinion of the court. And the importance of the decision, as affecting municipal development in this state both now and hereafter, seems to justify me in placing on record the reasons which govern my dissent.

The situation may be fairly summarized as follows:   The inhabitants of the city of Waterville desired the present use of a city hall building, which by reason of the constitutional debt limit they were unable to build by borrowing money therefor.   The city, being indebted already beyond its debt limit, could not incur any debt for that purpose.   It owned land which had already been devoted to and used for city hall purposes.   It was willing that the land and the new building which might be built upon it should be held for the payment of the cost of the building.   In consideration of the use of the building, the city was willing to be bound to pay the actual current expenses, and a sum equivalent to the interest on the cost of the building, and to assume liability for such damages as might be incurred in the construction of the building. The city also desired to have the right to pay, at its option, whenever it could constitutionally do so, the cost of the building, at one time or in installments.   None of these things, however, could be done, if thereby the city was to incur a debt or liability, within the meaning of the constitution.   The legislature sought to enable the inhabitants of the city of Waterville to accomplish these purposes by the act creating the City Hall Commission.

I concede all that is said in the opinion of the court concerning the cordial, even intimate, relations between the Commission and the city.   I see no reason why they should not be so.

The personnel of the Commission, the manner in which its mem-

bers should be chosen, and its duties and powers concerned only two classes—the inhabitants of the city and the prospective bondholders. It mattered not how closely the city was enabled to control the doings of the Commission or the management of the building, if those proposing to buy bonds were satisfied. That was merely a matter of regulative machinery. Nor did it matter, I think, if, as stated in the opinion, the city would have the title to the building, subject to the lien of the bondholders. That lien is their substantial protection; and if they were satisfied, no one else should complain. Nor is it of any particular consequence whether the city in its occupancy of the building is correctly styled a tenant, or whether the compensation it is to pay for the use of the building is properly a rental. These are merely names.

There seems to me to be no good reason why the city, with legislative permission, under these circumstances, may not divest itself of the right to the use of the building unless it pays what is equivalent to a fair rental. It seeks to put the property in trust for the benefit of those persons who advance money for the purpose of building it, and for the purposes of the trust it is to pay a compensation, which in the legislative act is styled rent. It is to remain in the possession and control, to be sure, but this privilege is subject to the duty of paying the compensation. If an individual places his property in trust, is it not permissible for him to agree to pay a rent in consideration of retaining the use?

All these things do, indeed, show the relations which the city bears to the building and to the Commission. Aside from the constitutional limit upon municipal indebtedness, I am unable to see why such relations may not properly be created by the legislature. And it is the legislature which has attempted to create them in this case. It must be remembered that we are not dealing with natural persons. These relations are not to be deemed colorable. as is frequently the case in the relations between private individuals, and as was the case in *Gross* v. *Jordan*, cited in the opinion, The relations in this case were created by law, by the statute, by the only body which had the right to create them. Both the city and the Commission are creatures of the legislature. Their powers,

duties and responsibilities are all limited by the legislature, and subject to legislative change and regulation. The same power which created the city of Waterville also created the Commission, and granted to it certain powers and imposed certain duties. *Burlington Water Works* v. *Woodward*, 49 Iowa, 58.

These relations are lawful, unless by operation of this statute the municipal debt of Waterville would be increased. The statute creating this Commission should be construed, like every other statute, according to the clear intention of the legislature as expressed therein. That intention, I take it, was that the city might put its city hall lot into a trust; that the trustee might hire money for the construction of a city hall on the security of the property alone; that the city should not in any event be liable for the debt; that the city might have the possession and control of the building by paying annually therefor a fair compensation, but not otherwise; and that the city might pay from time to time, or at one time, if it could constitutionally, the amount necessary to redeem the property from the bondholders. This is all there is to it.

The real question, however, underlying all others, is whether this legislation is in contravention of the constitution of Maine, in that it may increase the debt of the city beyond its limit.

Whatever may be the opinion of the court of the wisdom or expediency of this instrumentality devised as a part of municipal government in the city of Waterville, if its operation does not tend, directly or indirectly, "to increase the debt or liability" of the city of Waterville, it should not be held to violate the constitutional provision referred to. To the legislature, and not to the court, has been assigned the power to create municipal corporations and municipal governments, and the duty to modify, regulate and control them for the best interests of the people. With the exercise of this duty we should not interfere, unless the legislature oversteps the organic law of the state. The city is the creature of the state. Its powers and duties are defined and limited by the state, acting through the legislature. The state can abolish it and substitute another instrumentality in its place. The state may create, within the town or city, other municipal instrumentalities,

in furtherance of the public weal, as, for instance, village corporations, fire and sewerage districts, all performing municipal duties, which otherwise would devolve, or might have been devolved, upon the town or city itself. The state in some instances has created commissions to aid in municipal regulation, like police commissions and fire commissions, answerable not to the municipality, but to the statutes which created them.

I think it is not to be questioned that such legislation is within the power of the legislature. *No. Yarmouth* v. *Skillings*, 45 Maine, 133 ; *People* v. *Draper*, 15 N. Y. 532.

The complainants charge, and in argument claim, that the act incorporating the City Hall Commission, as a whole, is "an evasion and legal artifice" to enable the city to increase *its* debts and liabilities far beyond the constitutional debt limit created by the twenty-second amendment to the constitution, and is therefore unconstitutional and void.

The broad ground is taken that the statute under consideration is nothing but a mask, a scheme, a contrivance, a legal artifice, by which Waterville can get a city building, while indebted beyond the constitutional limit, by indirectly creating a debt or liability, and thus break the spirit, if not the letter, of the amendment above referred to.

"To get at the thought or meaning expressed in a constitution, the first resort, in all cases, is to the natural signification of the words in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning apparent on the face of the instrument must be accepted, and neither the courts nor the legislature have the right to add to it or take from it. . . . . The simplest and most obvious interpretation of a constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption." *Commissioners of Lake County* v. *Rollins*, 130 U. S. 662.

It is a striking and suggestive fact that the states whose courts have construed the debt limit amendments most narrowly and

strictly, most abound in various schemes and artifices for municipal improvements, like incorporated "road districts," "sanitary districts," "drainage districts," "fire districts," and "commissions" of all sorts possessing power to levy taxes or issue bonds. Not only is it held that these schemes and artifices are constitutional and that the legislature can create every conceivable description of corporate authorities and endow them with all necessary powers, but it is also held that the power of the original municipality to incur indebtedness is not in the least affected by the indebtedness or authorized indebtedness of its sub-municipalities. The two corporations are in this respect entirely distinct. *Wilson* v. *Sanitary District*, 133 Ill. 443 ; *West Chicago Park Commissioners* v. *Chicago*, 152 Ill. 392 ; *People* v. *Salomon*, 51 Ill. 37 ; *Butz* v. *Kerr*, 123 Ill. 659 ; *Owners of Lands* v. *People*, 113 Ill. 304 ; *St. Louis* v. *Shields*, 62 Mo. 247 ; *Horton* v. *Mobile School Commissioners*, 43 Ala. 598 ; *Kelly* v. *Minneapolis*, 30 L. R. A. 281 ; *Orvis* v. *Park Commissioners*, 88 Iowa, 674 ; *Todd* v. *Laurens*, (S. C.) 26 S. E. 682 ; *Adams* v. *East River Savings Institution*, 136 N. Y. 52.

The act in question creates a City Hall Commission, to which the city of Waterville has the power of appointment, which is charged with the duty of building a city hall for the use of the city, has power to issue bonds for that purpose, and is constituted a trustee for the bondholders.

It is not claimed that the building or leasing of a city hall by a city is not legal and proper, as a municipal act. *Spaulding* v. *Lowell*, 23 Pick. 71 ; *Stetson* v. *Kempton*, 13 Mass. 278 ; *State* v. *Haynes*, 72 Mo. 377 ; *People* v. *Mononey*, 4 Cal. 9 ; *Halbut* v. *Forrest City*, 34 Ark. 246 ; *Eastman* v. *Meredith*, 36 N. H. 295 ; *Beaver Dam* v. *Frings*, 17 Wis. 409 ; *Torrent* v. *Muskegon*, 47 Mich. 115 ; *People* v. *Green*, 64 N. Y. 499 ; *Rome* v. *McWilliams*, 67 Ga. 106 ; *Camden* v. *Camden Village Corp.*, 77 Maine, 530.

It is admitted that the primary object of the proposed city hall will be for the city's use. If the hall, which shall be adapted for meetings of the citizens for municipal, political and other purposes, shall at the same time be fitted so that it can be used as a theatre

or for purposes of amusement, when not needed for the use of the city, and thereby produce an income for the city's benefit, I think the erection of the city hall is no less within the scope of legitimate municipal purpose. Such seems to be the nearly universal practice in this and other states, and such is the result of the decided cases. *French* v. *Quincy,* 3 Allen, 9; *Worden* v. *New Bedford,* 131 Mass. 23; *Jones* v. *Sanford,* 66 Maine, 585; *Stetson* v. *Kempton,* supra; *Halbut* v. *Forrest City,* supra.

To call this act a "scheme" or "artifice" does not add to the weight of the argument. Much private legislation consists of "schemes." The wit of men is all the time being exercised in accomplishing new results by new means, within legal limits. If needed public improvements, if the ownership of public water supplies, and the like, by a town or city can be accomplished only by a "scheme" like this, and that without infringing upon the constitutional amendment, or becoming subject to the evils which that amendment was intended to prevent, then it is to the credit of the legislature that a "scheme" has been devised.

The question is whether any of the specific provisions of the act are within the inhibition of the constitution. Does the grant of authority to the city to convey its old city hall lot to the Commission in trust, or to the Commission to issue bonds, or the requirement of an annual tax levy to pay "all expenses for repairs, insurance and management," and an annual rental of the building, or the requirement that the "revenue derived from the building shall be invested in a sinking fund to be used for the purchase of the bonds," tend to "increase the debt or liability" of the city?

The language of the constitution is clear. No refinement of language can make it more so. Of its absolute wisdom no one can doubt. Its purpose is equally clear. It is easy to read it in the light of the history of the state. Municipalities of tax-payers can in most instances safely be left to tax themselves, but occasionally a wild and unwarranted enthusiasm attacks a community, as it does an individual. In the years just prior to the adoption of this constitutional amendment many towns in this state had incautiously lent their aid to what were thought to be improvements, notably

unsuccessful railroads, and in doing so, had incurred so great indebtedness that insolvency was the result, and liquidation was resorted to. This indebtedness was piled up to be met by future taxation, in some cases by a future generation, but like all "debts" it was to be paid, and it could be paid only by municipal taxation. It was, therefore, to prevent municipalities from incurring debts or liabilities (beyond the limit) that must be paid by future taxation, which was the object of the constitutional amendment. Burdens must not be created in the present to be laid upon the shoulders of future tax-payers. A "debt" is what is owed—and must be paid. It is claimed that the word "liability" is more ·significant in this instance. A definition which is ample for the purpose of construing the constitution is, "The condition of being responsible for a possible or actual loss, penalty, evil, expense or burden." Standard Dictionary. It will be easily perceived that this definition involves the idea of an ultimate pay-day. To be liable in this sense is to be financially responsible, to be obliged to pay, at least, upon a contingency. To be "liable" is to be bound, in the present, to pay, in the future, certainly, or upon a contingency. So defined, the constitution accomplishes its full purpose. It has protected over-confident communities from themselves, and has been and is a strong bulwark of our municipal credit. But it never was intended to prevent a municipality from acquiring for itself such advantages as it can, by any "scheme" or "artifice" which does not create or pile up a debt or liability now which must be paid by it by and by.

I. Is the provision authorizing the conveyance of the old city hall lot to the Commission in contravention of the constitutional amendment referred to? I do not think so. As has already been said, the City Hall Commission is a legal and proper municipal instrumentality. It was competent for the legislature to create it. The act merely authorizes the transfer of a piece of municipal property created for municipal uses, from one municipal corporation to another municipal corporation, to be used for the same purpose by the same people. Both corporations are a part of the

municipal machinery of the same city. The real beneficiaries are not changed. The act simply permits a change in the agency by which the public purpose is to be accomplished. Analogous statutes are frequent. By a recent statute in this state, all the property of school districts, each a separate and distinct municipal corporation, was transferred, nolens volens, to the towns in which they were situated. _The right to do so has not been questioned. Much more is this permissive act legal. But it is said that this property was to be conveyed in trust to another corporation to secure its debts. True; but the other corporation was but another instrumentality of the same municipality. Not only does the legislature have power to change, modify or limit municipal corporations, but it can control the use and disposition of municipal property, or so much of it as is acquired for and applied to public municipal uses. *No. Yarmouth* v. *Skillings*, 45 Maine, 133; *Weymouth & B. Fire District* v. *Co. Com.*, 108 Mass. 142; *Whitney* v. *Stow*, 111 Mass. 368; *Kingman, Petr.*, 153 Mass. 566; *Meriwether* v. *Garrett*, 102 U. S. 472; *Mount Hope Cemetery* v. *City of Boston*, 158 Mass. 509, (35 Am. St. Rep. 515, note); *Richland Co.* v. *Lawrence Co.*, 12 Ill. 8; *Harris* v. *Board of Supervisors*, 105 Ill. 445; *Mayor of Baltimore* v. *State*, 15 Md. 370; *Coyle* v. *McIntire*, 7 Houst. 44.

Some courts have' gone so far as to say that the legislature may divert municipal property to other and different uses from those to which it has been applied by the municipality itself. *Indianapolis* v. *Indianapolis Home*, 50 Ind. 215. See note to *Mount Hope Cemetery* v. *Boston*, (158 Mass. 509) 35 Am. St. Rep. at p. 536.

If the legislature may require an absolute conveyance of such property by a city to another municipal corporation to be used for the same purpose, can it not permit the conveyance in trust, reserving to the city what may be called an equity of redemption? I think it can. It must be remembered that it lies with the legislature to determine how and upon what terms and conditions, and for what purposes, a municipal corporation may hold property.

It is claimed, in argument, that the act is unconstitutional, so far as the authorized conveyance of the city hall lot in trust is

concerned, because thereby the property of the city is made subject to the lien of the bonds, and in case of default, it may be sold, and the proceeds applied to the payment of the bonds, and in this way the city is liable to lose its property.

It is not clear that such a possibility would render the act invalid. The act is permissive. The legislature merely gives the authority. And when the legislature and the municipality affected both agree as to the wisdom of the proposed proceeding, I am unable to see how it infringes upon any provision of the organic law. But a sufficient answer to this objection is, that it is at all times within the power of the city, by the legitimate exercise of the power of taxation, to provide for the payment of the bonds, and so prevent a forfeiture or loss. The amount of the bonds, the rate of interest, and the time or times when they shall mature are all subject to the approval of the city, and it certainly has it within its power to make such provisions that even the payment of the debt of the City Hall Commission, from time to time, by money raised by taxation, would not be extremely onerous.

It is claimed further that the subtraction of a portion of the municipal assets of the city is in effect increasing its "debt or liability," inasmuch as it lessens the means from which the city can derive funds for the payment of its debts. A plain reading of the constitution does not lead to this result. A city is forbidden to "increase its debt or liability," entirely irrespective of its assets. They may be more or they be less. If diminishing the assets increases the debt, so increasing the assets ought to diminish the debt. But it is not so. The prohibition is absolute, as to the debts. The amount of a person's debts is in no way contingent upon the amount of his assets. His debts are not increased by selling his assets.

In computing indebtedness, to ascertain whether it is within the limit, the courts do not permit the deduction of assets. The debt stands alone. *Lovejoy* v. *Foxcroft*, 91 Maine, 367. Even cash in the treasury for the purpose of paying bonds cannot be deducted. *Waxahatchie* v. *Brown*, 67 Tex. 519; 17 Am. & Eng. Corp. Cases, 348. So neither can uncollected taxes nor the levy for the present year be deducted. *Council Bluffs* v. *Stewart*, 51 Iowa, 385.

A case in point is *Fowler* v. *Superior*, 85 Wis. 411.   The city of Superior issued its improvement bonds, containing an unconditional promise of the city to pay.   The bonds were made "payable out of the proceeds of certain improvement assessments," were "issued upon the faith and credit of said assessments," and "their payment was made chargeable upon the property benefited by said improvements."   It was held that the bonds constituted an indebtedness of the city within the meaning of the constitutional limitation.   The court said:   "It is the indebtedness of the city the constitution limits, and nothing else can be considered than that.  . . . .   The language of the constitution 'become indebted in any manner or for any purpose' is to be understood in its commonly accepted sense.   Cannot one become indebted if he has pecuniary resources sufficient to pay it?"

The same general considerations which apply to the provision for the conveyance of the city hall lot also apply to the requirement that the revenues from the building shall be invested in a sinking fund to be used for the purchase of bonds issued by the Commission.   This revenue as earned becomes municipal property.   Placing it in a sinking fund does not, for reasons already stated, increase the city debt or liability.   The legislature, especially with the assent of the city, which was given by accepting the act, may well impose a trust upon this revenue, when its purpose is to relieve the burden of debt from a property in which the city has an equitable interest.   Indeed it may be said that the trust attaches to the money, as earned, and that the city never will have any title to it except subject to the trust.   Would it not be clearly within the power of the legislature to require a city to set aside any income derived by it from its own income producing property, in order to create a fund to be used for proper municipal purposes?   And if so, why may not the city be required to set aside the income of this trust property and apply it in time to the payment of the liens upon it?   It is difficult to see how any municipal debt or liability is created thereby, and unless a debt or liability is created thereby, the propriety of the sinking fund provision is a question which addresses itself to the legislature and not to the court.

But it is said that the provision in the act creating a sinking fund contemplates the raising of money for it, not only by taxation, but by other means, as, for instance, by borrowing. Certainly, there is no constitutional objection to that, if at the time of borrowing, the city has the constitutional power to do so, just as any city or town may hire money to build a hall if it can do so within its debt limit. To authorize a city to borrow money may give opportunity for the " tyranny practiced by majorities," but it is a tyranny which is necessarily incidental to the right of the majority to govern. And the wisdom or unwisdom of bestowing that power upon the majority is a matter which is addressed to the legislature. To that body, and not to the court, is confided the power to add to and subtract from the rights and privileges of municipalities.

It is now the general law of this state that towns and cities may create sinking funds by taxation. The Laws of 1897, Chap. 208. See *Burlington Water Works* v. *Woodward*, 49 Iowa, 58.

II. The complainants argue that the city may ultimately be liable for the payment of the bonds issued by the Commission, that there is at least an implied liability which is as obnoxious to the constitution as an express liability. I am unable to see how this can be so, unless the Commission is the agent of the city for the purpose of issuing bonds. But the whole purport of this act is that the city shall not be liable for the bonds of the Commission. The legislature can undoubtedly create an agent for whose acts the city would be liable, but I think it did not do so in this case. Nothing can be clearer than the purpose of the legislature that the bondholders should look to the property alone for the payment of the principal of the debt.

The City Hall Commission is created a body corporate and politic; it has a seal; it can sue and be sued. It has a separate legal entity. It is a corporation entirely distinct from the municipal corporation of Waterville. It is true that the persons composing the Commission may be chosen by the city and that the city may prescribe its powers and duties, not inconsistent with the act

of incorporation, but these are matters of mere corporate machinery, as I have already said, designed to protect the equitable interest of the city in the trust property. The bonds, if issued, will be the corporate bonds of the City Hall Commission. The security and the mode of enforcement are both prescribed by statute. The only liability the city will be under is that of losing its equitable interest in the property, in case of non-payment of the bonds, and that is a possibility, or at the worst, a likelihood, rather than a constitutional liability or financial responsibility, as already defined in this opinion. And the city at all times has the legal power to prevent any such possibility by levying a tax. The City Hall Commission is a municipal agency, but it is not the agent of the other municipal corporation, the city, in the issuing of bonds. And such bonds will not be a debt or liability whereof payment by the city can be enforced. *West Chicago Park Com.* v. *Chicago*, 152 Ill. 392. The reasoning in *Adams* v. *East River Savings Inst.*, 136 N. Y. 52, is applicable to this question. " The power of the county or city, as the case may be, is restricted only by the amount of its own debt, and for the purpose of creating a disability against the one or the other, the debts of both cannot be aggregated." See *Wilson* v. *Sanitary District*, supra, and other cases cited in same connection.

A contract to build a sewer, by which the contractor was to receive certificates of assessments upon abutting owners of adjacent property in full payment, was held not to create a debt within the meaning of the constitutional limitation. *Davis* v. *Des Moines*, 71 Iowa, 500. Where a city council could not authorize expenditures for the current year beyond the limit fixed by the charter, a contract for grading and paving, not to be completed within the municipal year, and beyond the limit for the current year, was held valid. *Weston* v. *Syracuse*, 17 N. Y. 110.

The act, as I understand it, provides that the commission shall hire the money, and the debt will be the debt of the commission. The case of *Mayor of Baltimore* v. *Gill*, 31 Md. 375, which is sometimes cited upon this general question, and adversely to the ground I take, is a good illustration of the distinction which I

think should be made.  In that case the court held that when an
ordinance provides that $1,000,000 shall be raised by the pledge
or hypothecation of stock held by the city, it is substantially the
same thing as if it provided in terms for *borrowing* the money.
To raise money on a pledge is to borrow it, and the party from
whom it is obtained actually loans it, although in the ordinance it
is called *furnishing* the money, and this is the result, though it is
provided that the parties loaning the money shall look for its
repayment exclusively to the stock pledged, and that in no event
is the city to be liable or responsible for the return or repayment
of any part thereof, even though the stock pledged should prove
insufficient.  The court said, "A debt is money due upon a con-
tract without reference to the question of the remedy for its col-
lection.  It is not essential to the creation of a debt that the
borrower should be liable to be sued therefor."  In that case, the
city made the contract and borrowed the money and thereby cre-
ated a debt.  That was the gist of the decision.  In this case, a
sub-municipal corporation which the legislature had authority to
call into being makes the contract and borrows the money.  Such
corporations and such contracts are sustained, as I have already
pointed out, although they accomplish indirectly for the people of
the city what the city cannot do itself.

But it is said that the city would be liable to proceedings by
mandamus.  I do not think the city would be liable to proceed-
ings by mandamus to aid in the recovery of the debt, for unless
there is a liability for the debt, no proceedings whatever against
the city, looking to its recovery, would lie.  That mandamus might
lie to compel it to meet the annual charges, I concede.  There is no
provision in the act which requires the city to raise any money
whatever at any time except "such sum or sums as may be neces-
sary to pay all expenses for repairs, insurance and management of
the building, together with an annual rental of the building in a
sum equal to the annual interest on the bonds issued and outstand-
ing."  There is no requirement that the city shall pay any portion
of the debt or raise any money to contribute to the sinking fund.
Creditors who take the bonds would have to take them subject to
the provisions of the act.

III.   The complainants claim that the provision for raising money by taxation annually to pay expenses and rental creates in the present a debt or liability to be paid in the future, that the amount of such debt is the aggregate of the payments to be made.

The opinion of the court admits that a town may make time contracts in order to provide for certain municipal wants which involve only the ordinary current expenses of the municipal administration, provided there is to be no payment or liability until the services be furnished, and then to be met by annual appropriations and levy of taxes; and also that such a time contract can be made for the use of a hall for a term of years to be used for strictly municipal purposes.

This may cover all that is sought to be done under the act in question.   But if not, I wish to say that such an arrangement as is contemplated by the act is well supported by the authorities.   I think that a city may contract for a definite term, or an indefinite period, for such current municipal expenses, as this act provides for, if provision is made by law requiring the raising annually by taxation of the amount necessary to pay such expenses as they accrue.   *Atlantic City Water Works Co.* v. *Atlantic City,* 48 N. J. L. 378; *East St. Louis* v. *East St. Louis Gas-light & Coke Co.,* 98 Ill. 415, (38 Am. Rep. 97), where it was held that the aggregate future payments were not a present indebtedness.

In *Grant* v. *Davenport,* 36 Iowa, 396, in case of a water contract for a term of years, it was said, " A city already indebted to the maximum limit . . . . may rent real estate and buildings (suitable for its officers) for a like use, and agree to pay a reasonable rent therefor; such a contract would not be creating an indebtedness, but is a cash transaction, and the length of time the contract is to continue does not alter the effect, . . . . where the contract made by the municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not incur an incurring of indebtedness within the constitutional prohibition."

See *Valparaiso* v. *Gardner*, 97 Ind. 1, (49 Am. Rep. 416);
*Burlington Water Works* v. *Woodward*, 49 Iowa, 58;. *Walla Walla
Water Co.* v. *Walla Walla*, 60 Fed. Rep. 957; *Wade* v. *Oakmont
Borough*, 165 Pa. St. 479; *Merrill Railway and Lighting Co.* v.
*City of Merrill*, 80 Wis. 358; *Crowder* v. *Sullivan*, 128 Ind. 486;
*New Orleans Gas Co.* v. *New Orleans*, 29 Am. & Eng. Corp.
Cases, 246; *Smith* v. *Dedham*, 144 Mass. 177; *Erie's Appeal*, 91
Pa. St. 398; *State* v. *Atlantic City*, 47 N. J. L. 558; *Keihl* v. *South
Bend*, (Ind.) 76 Fed. Rep. 921; *LaPorte* v. *Gamewell Fire Alarm
Tel. Co.* (Ind.) 45 N. E. 588; *Hay* v. *Springfield*, 64 Ill. App.
671; *Quill* v. *Indianapolis*, 124 Ind. 292.

While the rent required by this act to be paid is arbitrarily fixed,
it does not seem to be unreasonable in amount, as rent. And if
the amount is fixed by the legislature and assented to by the city,
and the amount is required to be raised annually by taxation, I
think the statute provision requiring it should be held constitu-
tional. It is not a contribution towards the principal part of the
cost of the building. It is not a paying for the building in install-
ments. It is merely a payment of the interest upon the cost of so
much of the property as is represented by the building, together
with expenses of maintenance, and that may be regarded as a rea-
sonable rental. There would be an obligation to pay only when
and as fast as the consideration was received.

It is generally held that the state can direct a town to make
municipal improvements, and can lawfully impose a tax upon the
property of the citizens of the town to pay the necessary expenses.
*People* v. *Flagy*, 46 N. Y. 401; *Thomas* v. *Leland*, 24 Wend. 65;
*Easton & Amboy R. R. Co.* v. *Central R. R. Co.*, 52 N. J. L. 267;
*Guilder* v. *Otsego*, 20 Minn. 59; *Carter* v. *Cambridge & Brookline
Bridge Proprs.*, 104 Mass. 236; *Kirby* v. *Shaw*, 19 Pa. St. 258;
Cooley's Const. Lim. § 230.

A familiar illustration in this state, of the power of the state to
compel towns to raise money by taxation for specific purposes, is
found in the requirement that " every town shall raise and expend,
annually, for the support of schools therein, . . . . not less than
eighty cents for each inhabitant." R. S., c. 11, § 6.

For these reasons I think that the act creating the City Hall Commission of Waterville did not infringe upon any constitutional provision, and that the bill should have been dismissed.