# The Burlington Water Co. v. Woodward.

1. **Municipal Corporations : LIMIT OF INDEBTEDNESS : WATER-WORKS.** An ordinance authorizing a corporation to construct water-works within the city upon certain conditions prescribed, and providing that the city shall have the right, whenever its financial condition may permit, to purchase and control the works, is not an "incurring of indebtedness" within the prohibition of the constitution. It is only the assuming of an obligation which, without further action on the part of the city, will ripen into a debt that is thus forbidden.

2. ——— : **TAXATION.** It is competent for the city to provide a tax, not exceeding the rate of five mills, for the maintenance of water-works, and a sinking fund to reduce the debt thereon.

3. ——— : ———. The fact that by the levy of such a tax the city may, in time, become the owner of the water-works, does not render the ordinance open to the objection that it provides a means for accomplishing indirectly what it has not the power to do directly, because none but legal and constitutional means are proposed to be employed.

*Appeal from Des Moines District Court.*

THURSDAY, JUNE 13.

THE petition states that under and by virtue of an ordinance of the city of Burlington a contract was entered into between the plaintiff and the city, whereby the plaintiff agreed to construct water-works, by means of which the city and citizens thereof, in that portion of the city denominated as the "water district," could be supplied with water; that plaintiff had fully complied with the contract on its part, but that the defendant, as mayor of the city, had refused to sign a certificate it was provided in the contract and ordinance should be indorsed on certain bonds of the plaintiff, and a *mandamus* is asked compelling the defendant to indorse and sign such a certificate.

As a defense the defendant pleaded that, at the time the ordinance was passed and contract entered into, the city was indebted to an amount exceeding five per cent of the value of

the taxable property within the corporation. To this defense there was a demurrer, which was sustained; and defendant appeals.

*C. L. Poor*, for appellant.

*P. Henry Smyth*, for appellee.

SEEVERS, J.—The ordinance is quite lengthy, and among other things provides that the cost of the water-works shall not exceed two hundred thousand dollars, and that the plans and specifications thereof shall be approved by the city council. The length of the mains and number of hydrants are prescribed, and provision is made for the right of way. The quantity of water to be furnished daily, and the number of streams, and height to be thrown in case of fire, are fixed. All that portion of the city which lies within the limits of the benefits or protection of the water-works constitutes the water district, which may be changed from time to time by the city council. A special tax of five mills on the dollar must be annually levied on the taxable property in said district, which, together with the earnings of the company derived from individuals using the water, constitutes the water fund, and such tax cannot be diminished until a certain surplus is found to exist. The company is authorized to issue its bonds for an amount not exceeding two hundred thousand dollars, to be secured by a mortgage on the water-works. They are to bear interest at six per cent, and be payable within fifty years. The bonds are to be sold at par, unless the city council consent they may be sold for less. The capital stock of the company is fixed at three hundred thousand dollars, of which no more than ten per cent is to be paid unless required by the provisions of the ordinance or some court of competent jurisdiction. The interest on the bonds must be first paid out of the water fund by the city directly to the bondholders, and then there shall be paid from said fund two thousand dollars per annum, which

must be appropriated to purchasing bonds for cancellation or a sinking fund constituted therewith.

The expenses and taxes of the company are to be next paid out of the water fund, and lastly there is to be paid from said fund not exceeding twelve per cent per annum on the amount actually paid on the capital stock of the company, provided such amount did not exceed thirty thousand dollars. In case more than that amount was paid in only eight per cent per annum was to be paid on whatever amount there might be in excess of thirty thousand dollars. If the water fund for any year should prove insufficient to pay the charges aforesaid, the deficiency is to be paid out of any surplus there might be in any subsequent year, and if said fund should prove more than sufficient for the purposes aforesaid, the surplus is to be added to the sinking fund or applied to the purpose of extending the works, and if necessary for the purpose of extension a new series of bonds, secured by a second mortgage, may be issued by the company. As soon as the financial condition of the city will permit it to purchase and control the works, the city has the right to do so upon assuming the duties and liabilities of the company, and the franchise is thereby terminated. A sufficient quantity of water is to be furnished for private consumption, and also for city purposes. For the former a reasonable charge is to be made, and the books of the company are to be open to the inspection of the city council. Section 20 of the ordinance is as follows:

"SEC. 20. It is intended by this ordinance that the said company shall make an annual net dividend of twelve per cent upon all the cash actually paid in upon their stock, and no more, as hereinbefore provided. But they must rely for the means of making such dividend entirely upon the water fund aforesaid; nothing for this purpose, or for defraying any of the other expenses connected with said water-works, shall ever be payable out of the proceeds of the general taxation in said city. But the special tax hereinbefore provided for shall

The Burlington Water Co. v. Woodward.

never be so far diminished as to prevent the annual dividend of twelve per cent by said company upon the cash payments on their stock, as hereinbefore contemplated, and a certificate shall be indorsed upon each of the bonds issued as aforesaid, stating the present assessed value of all the property upon which said special tax is to be annually levied, together with a stipulation that from the said water fund the city will pay the semi-annual interest upon said bonds, and also the sum of two thousand dollars annually into the sinking fund, before any money shall be taken out of the said water fund for any other purpose. This indorsement shall be subscribed by the mayor of the city, and authenticated by the seal of said city, and thus create an irrepealable obligation in favor of the holders of those bonds respectively."

We have quoted largely from the ordinance because it, in fact, constitutes the contract.

The Constitution provides as follows: "No county, or other political or municipal corporation, shall be allowed to become

1. MUNICIPAL corporation: limit of indebtedness: water-works. indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation, to be ascertained by the last State and county tax list previous to incurring such indebtedness." Article XI, § 3, Code, 787.

It is provided by statute that cities have the power to erect water-works, or authorize the erection of the same, and where such authority is granted to individuals or a corporation, the city may authorize a charge for the use of the water, to be collected of the individuals using the same; and a special tax not exceeding five mills on the dollar, in any year, in addition to all other taxes, may be levied for the purpose of paying the expenses and operating the works, and which tax, with the water rents, shall be sufficient for that purpose. Code, §§ 471, 472, 473, 474, 475.

The constitutionality of this statute is not assailed. The authority, therefore, to pass the ordinance is undoubted, unless

The Burlington Water Co. v. Woodward.

the indebtedness beyond the constitutional limit renders it void. The material and only question, therefore, is whether an indebtedness was thereby created within the constitutional inhibition.

It is believed the constitution applies not only to a present indebtedness, but also to such as is payable on a contingency at some future day, or which depends on some contingency before a liability is created. But it must appear such contingency is sure to take place irrespective of any action taken or option exercised by the city in the future. That is, if a present indebtedness is incurred or obligations assumed which, without further action on the part of the city, have the effect to create an indebtedness at some future day, such are within the inhibition of the constitution.

But, if the fact of indebtedness depends upon some act of the city, or upon its volition to be exercised or determined at some future day, then no present indebtedness is incurred, and none will be until the period arrives, and the required act or option is exercised, and from that time only can it be said there exists an indebtedness.

Now the ordinance expressly provides that the city may purchase the works as soon as its financial condition will permit. But this provision cannot have the effect to create a present or future indebtedness, and without serious doubt was agreed upon in view of the present financial condition of the city. If, at some time in the future, the city can, without a violation of the constitution, purchase the works and chooses to do so, we are unable to see that such a state of facts creates a present indebtedness, or that any obligation is now assumed by which a debt can be said to be created which is unconstitutional.

The tax required to be levied is clearly authorized by the statute, and such tax, together with the income of the company derived from other sources, the ordinance expressly provides shall pay all obligations assumed

2. ——: taxation.

by the city.   If it does not, neither the bondholders nor company have any claim on the city for the deficiency.

The obligation of the city is to levy the tax, and see that the amount collected is applied to the specified purposes. If the special fund legally provided is not sufficient, then it may be well said the deficiency is not payable by the city, and it is difficult to conceive that there can be such a thing as a debt which is never to be paid.   No burden is created thereby, and there cannot be such an indebtedness.   In a constitutional sense the prohibited indebtedness must be a burden, and payable by the city from funds which could not constitutionally be appropriated to that purpose.   Whether the fund legally provided will be sufficient for the designated purpose we have no means of knowing.   Nor is this regarded as material if no other charge is created on the city by the ordinance.

Should there be a deficiency the result may be that the water-works may be sold and pass into the hands of another corporation, or become the property of some individual; but this could not affect the city prejudicially, or, at least, could not have the effect to create or change the indebtedness.   If the works should become useless, or cease to be operated, the obligation of the city to levy the tax, and all other obligations growing out of the ordinance, would cease, and, in the meantime, it will have had the benefit of the works in consideration of the payment of whatever amount of money has been realized from the tax.

It is urged that the stockholders of the plaintiff are not required to pay anything; that the water-works are in fact constructed with the bonds or proceeds thereof, and that the plaintiff does not contribute anything for the purpose of construction.   It is also insisted that the ordinance attempts to do by indirection what cannot be done directly.   If this be conceded, and yet by the means adopted no debt is incurred or obligation assumed by the city which is

illegal, it is difficult to see why the means adopted are unconstitutional.

The difficulty with the assumption is, no illegal means are adopted, nor can it be said that the result is accomplished by indirection. For, if the city could, by the levy of the tax for a single year, construct the works, and should do so, such would be clearly a constitutional act. The fact that it will require the levy of the tax for ten or fifty years, and the city chooses, as it is expressly authorized to do by the statute, to employ, permit or contract with the plaintiff to construct the works cannot change this result.

It is possible, and for aught we know the city may, by levying the tax for a term of years, become the owner of the works, and such seems to be contemplated by the contract or ordinance. If such should be the result it cannot be said it has been acomplished indirectly, when it could not have been done directly, because none but legitimate and constitutional means have been employed to accomplish the result which on all hands is admitted to be desirable.

The certificate or indorsement required to be made on the bonds does not increase the liability of the city. The only obligation thereby assumed is that the city will make the payments therein named out of the "water fund," and such an obligation may be constitutionally assumed when the means to make the payments are legally provided.

It is possible a false or fraudulent certificate might be indorsed on the bonds. This, however, cannot be presumed or anticipated, and if it could it would be improper for us to now determine whether or not an unconstitutional liability on the part of the city would be thereby incurred.

Whether the contract is one that should have been made, or whether it will prove to be the best that could have been done by the city, is not for us to determine.

For the reasons above stated, we feel constrained to say the ordinance is not unconstitutional. The views herein expressed

are to some extent, at least, sustained by *Dively v. The City of Cedar Falls*, 27 Iowa, 227 ; and *Grant v. Davenport*, 36 Id., 396.

AFFIRMED.