## Lamboglia *v.* La Junta Escolar de Guayama.

# Apelación procedente de la Corte de Distrito de Guayama.

No. 58.—Resuelto en junio 22, 1907.

Contratos—Junta Escolar—Contratos Firmados Separadamente por los Miembros de la Junta sin Estar Constituídos en Sesión—Ratificación de la Junta.—Un contrato otorgado y firmado separadamente por los miembros de un junta escolar, sin estar constituídos en sesión, aunque sea válido en cuanto á su forma, no puede considerarse como otorgado por la junta misma, á no ser que ésta, constituída en sesión, lo ratificare, para lo cual tiene facultades, en cuyo caso el contrato tiene el carácter de acto otorgado por la junta y es válido en cuanto no sea *ultravires.*

Id.—Novación.—La novación de un contrato, para que sea eficaz, debe ser clara, y por mutuo consentimiento, y la existencia de éste debe probarse en términos que no den lugar á dudas con respecto á la intervención de las partes contratantes.

Id.—Rescisión—Apelación—Pruebas Contradictorias.—La rescisión de un contrato, cuando se imputa á una de las partes contratantes, debe probarse con actos concretos que justifiquen su intención de rescindir, mas si las pruebas fueran contradictorias, la apreciación que de las mismas hubiera hecho la corte inferior debe ser aceptada por el tribunal de apelación.

Id.—Aviso de la Fecha y Lugar en que Deban Celebrarse las Reuniones de la Junta.—Las disposiciones de la Sección 9 de la Ley Escolar de 1903, no son aplicables á la celebración ó ratificación por la junta, de un contrato de arrendamiento de finca urbana, no siendo necesario que se observen las formalidades que dicha sección prescribe para que la junta pueda celebrar sesión con aquel objeto.

Id.—Facultades de las Juntas Escolares.—La mayor parte de los principios generales que regulan las corporaciones municipales son también aplicables á las juntas escolares, las que, de acuerdo con la sección 7 de la Ley Escolar, tienen amplias facultades, y entre ellas la de arrendar edificios para fines escolares.

Id.—Limitación de las Facultades de las Juntas Para Contraer Deudas ú Obligaciones.—Un contrato celebrado por una junta escolar, para obtener el suministro durante un número de años, de agua, luz, y otros servicios semejantes, puede sostenerse como válido, por no envolver una infracción de la prohibición contenida en la sección 21 de la Ley Escolar Compilada, de 1904, y puede asimismo sostenerse y estimarse válido, á los efectos de dicha sección, un contrato de arrendamiento de una casa, por un cierto número de años, para fines escolares.

Id.—Facultades de las Juntas para Celebrar Contratos que Obliguen á sus Sucesores.—En términos generales, cuando el contrato verse sobre cosas que no sean necesarias, ó su duración sea injustificadamente larga, teniendo en cuenta la naturaleza de la corporación, ó cuando el contrato envuelva algún elemento de fraude, dicho contrato no puede subsistir.

ID.—En el caso de autos la junta escolar de Guayama celebró un contrato de arrendamiento de una finca urbana, por el término de cinco años, para establecer en ella una escuela industrial; según declaraciones testificales, ese edificio era el único de la ciudad apropiado para el caso, y se estipuló en el contrato que si el Departamento de Instrucción fabricaba un edificio, el contrato debía estimarse rescindido. *Se resolvió:* Que atendidas las circunstancias del caso no puede estimarse que el contrato de arrendamiento celebrado, sea un ejercicio injustificado de las facultades de las juntas.

APELACIÓN—PLIEGO DE EXCEPCIONES—RELACIÓN DE HECHOS.—Las notas taquigráficas no deben incluirse literalmente en el pliego de excepciones ó en la relación de hechos. La prueba debe consignarse en dichos documentos en forma narrativa, de acuerdo con la jurisprudencia ya establecida por el tribunal.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Rossy, Fiscal.*

Abogado del apelado: *Sr. José Guzmán Benítez.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta es una apelación procedente de la Corte de Distrito de Guayama en la que se celebró un nuevo juicio por virtud de una apelación de la corte municipal de Guayama. Se interpuso, asimismo, una reconvención. La sentencia de la corte de distrito declaró con lugar la demanda, desestimando la reconvención. Durante el curso del juicio en la corte municipal, el Attorney General, en representación del Pueblo de Puerto Rico, solicitó intervenir como demandado, cuya moción suponemos fué declarada con lugar, aunque no consta en los autos la resolución adoptada por la corte. Ambas partes, la junta y el Pueblo de Puerto Rico estuvieron representadas en esta Corte.

Hay en los autos una exposición del caso en donde se encuentran todos los documentos del caso y las notas taquigráficas. Los hechos esenciales así indicados están bien determinados en la opinión de la corte municipal, emitida en este caso, que es como sigue:

"El demandante presenta demanda ante esta corte contra la Junta Escolar de Guayama en cobro de ciento veinte dollars y al efecto alega:

"I. Que por contrato celebrado entre la junta demandada y el demandante el día 26 de septiembre de 1904, la primera arrendó al se-

gundo una casa de mampostería de su propiedad, sita en la calle de los
Jardines, esquina á la de Hostos, de esta ciudad, (cuya casa describe de
manera más cierta y definida en una enmienda presentada á la demanda que obra en autos), por término de cinco años y por el canon
mensual ó sea alquiler de cuarenta dollars, pagaderos por mensualidades vencidas.

"II. Que dicha Junta Escolar adeuda al demandante, por no haberlos satisfecho, los canones ó mensualidades vencidas y comprendidas
desde el 26 de agosto del año 1905 hasta el 26 de noviembre del mismo
año, ó sean tres mensualidades, que á razón de á cuarenta dollars
mensualidades hacen un total de ciento veinte dollars.

"III. Que á pesar de las gestiones del demandante no ha podido
éste conseguir el cobro de dichas tres mensualidades. Y termina el
demandante su escrito de demanda, suplicando de esta corte un fallo
en el que se condene á la junta escolar demandada al pago de los
ciento veinte dollars y las costas de este litigio.

La junta demandada contestó en tiempo la demanda, y en síntesis:
Reconoce en primer término al demandante la propiedad de la casa
en cuestión. Admite la existencia del contrato de fecha 26 de septiembre de 1904, á que hace referencia el hecho 1º. de la demanda; pero
alega que dicho contrato no es el contrato de la Junta Escolar de Guayama, sino un documento privado suscrito entre el demandante Juan
Lamboglia, Andrés Rodríguez, Leopoldo Venegas y John Zimmerman (los dos primeros, presidente y secretario de la Junta Escolar
de Guayama en la fecha en que fué suscrito el ameritado documento
y el segundo, superintendente del distrito escolar de Guayama) sin
que en dicho documento se exprese el carácter en que contrataron
dichos señores. Que no existe, según la ley, acuerdo alguno de la junta
escolar que autorizara la extensión por dichos señores del contrato en
cuestión, y que tal contrato ó convenio nunca fué aceptado ó reconocido por la corporación demandada, ni jamás realizó dicha corporación acto alguno tendente á reconocer su validez. Consigna, además,
la Junta demandada, que si bien es cierto que en octubre 20 de 1904, ó
sea con posterioridad al 26 de septiembre, aparece haberse tomado
por la junta un acuerdo respecto á la aprobación del arrendamiento de
un edificio al Sr. Lamboglia, ese acuerdo no hace referencia á qué determinado contrato se refiere, ni menciona otras condiciones que el
canon mensual, sin especificación de término ú otras estipulaciones.
Y que si se refiere á la aprobación ó ratificación de lo consignado en el
documento de referencia, dicho acuerdo no tiene fuerza legal para
obligar á la junta demandada por no haberse llenado para la celebra-

ción de la sesión en que se tomó, los requisitos que exige la sección
9 de la Ley Escolar. Alega también la parte demandada la defensa de
que, aún asumiendo que el contrato de 26 de septiembre fuese válido, ó
que siendo éste nulo la junta lo ratificara en su sesión 20 de octubre, á
que antes nos referimos, aún así, la junta no adeudaría cantidad alguna
al demandante porque el arrendamiento, si existió, cesó á fines de agos-
to del pasado año por desistimiento voluntario ó rescisión del mismo
por parte del demandante Lamboglia, cuya rescisión ó desistimiento
fué aceptado por la junta demandada. Se niega por la junta escolar
que el demandante en esta acción haya practicado gestión alguna cer-
ca de dicha junta para el cobro de lo que reclama en su demanda; y
se admite que la Junta Escolar de Guayama tuvo en arrendamiento la
casa descrita en la elegación primera de la demanda, pero no bajo el
contrato de 26 de septiembre, sino bajo otro contrato acordado en la
sesión que la junta demandada celebró el 9 de abril de 1905, en la que
se resolvió que suprimida la escuela industrial de Guayama se tomara
en arrendamiento al Sr. Lamboglia la casa de referencia, juntamente
con dos más de su propiedad. Y por último la Junta Escolar de Gua-
yama deduce reconvención en contra del demandante Lamboglia para
que caso que el contrato de 26 de septiembre se estime por la corte ha-
ber sido otorgado, se sirva declararlo nulo, y si á ello no hubiere lugar,
declarar rescindido dicho contrato; y para esto se apoya, no solo en las
alegaciones que preceden, sino también en que el contrato fué hecho en
contravención á las facultades conferidas á las juntas escolares por la
sección 21 de la ley que las rige; y porque no existió nunca causa de
fuerza mayor que impidió á la junta el cumplimiento del contrato en
cuestión. Previo señalamiento por la corte de la vista de este pleito el
día 31 del pasado mes de enero se practicó la prueba de ambas partes, y
después de oídos los informes de los abogados la corte se reservó la reso-
lución. No hemos de entrar en discusión acerca del primer hecho que
contiene la demanda, porque en la contestación se admite como cierto.
Asimismo se admite por la parte demandada la existencia del contrato
de 26 de septiembre de 1904; mas como se niega en primer lugar que
dicho contrato es de la junta, hemos de discutir ante todo esta primera
é importante cuestión. Según aparece de la prueba practicada en 26
de septiembre de 1904 se firmó un contrato por Juan Lamboglia de una
parte y Andrés Rodríguez, Leopoldo Venegas y J. W. Zimmerman,
en representación de la junta escolar, de la otra. ¿Es el contrato de
estos últimos señores el contrato de la junta escolar? ¿Estaban ellos au-
torizados para obligar á la junta á estar y pasar por lo que consignó
en ese contrato? Según la prueba, con anterioridad á la fecha del do-

cumento en cuestión no se tomó por la junta escolar acuerdo alguno que autorizara la extensión del mismo.—No existe en el libro de actas de la junta escolar resolución alguna de la que conste haberse acordado la celebración del referido contrato ni haberse autorizado á los señores de la junta que aparecen firmándolo para su otorgamiento; y no habiéndose presentado por el demandante prueba en contrario, tenemos que dar por sentado el hecho de que los señores de la junta que aparecen firmando el contrato de fecha 26 de septiembre de 1904, á nombre de la junta, no estaban autorizados para ello. Es, pues, á juicio de la corte, el contrato que nos ocupa, el contrato de todos y cada uno de los miembros de la junta escolar, pero no el contrato de la junta. Para que este contrato hubiese sido válido, hubiese sido necesario que la junta lo autorizara en *meeting* de sus miembros (7 L. R. A. 765). De la prueba aparece también que las firmas en ese contrato fueron obtenidas separadamente, y, por tanto, no pudo este contrato obligar á la junta (64 L. R. A. 399. Véase también L. R. A. 32, 403). Ahora bien; ese contrato, aunque no fuese en un principio autorizado por la junta, pudo haber sido ratificado más tarde por la misma, y este es un punto importante que hemos de resolver. Porque ese contrato, aunque no pudo obligar á la junta en un principio por no haberlo ésta autorizado, pudo haber sido aceptado más tarde. Esto es, con posterioridad pudo haber por la junta una aprobación, ya expresa, ya tácita del contrato. (Artículo 1278 Código Civil). Veamos lo que nos dice la prueba en este particular. El contrato fué celebrado en 26 de septiembre de 1904, y un mes más tarde nos encontramos con que la junta escolar de Guayama, en veinte de octubre del mismo año, acuerda, así consta en el libro de actas de la junta, "aprobar el contrato de arrendamiento de la casa de Don Juan Lamboglia, sita en la calle de los Jardines, esquina Hostos, para la escuela industrial, con el canon mensual de cuarenta dollars"; y si esto no fuera suficiente, vemos que la junta sigue ocupando dicha casa y pagando sus alquileres hasta el 26 de agosto del pasado año de 1905, con conocimiento ya del contrato. Y no cabe alegar, como alega la parte demandada, que ese acuerdo de 20 de octubre no hace referencia á determinado contrato ni menciona otras condiciones que el canon mensual, porque si alguna duda pudo haber existido en cuanto á esto, en el acto del juicio quedó aclarado que ese acuerdo se refería al contrato de 26 de septiembre de 1904. Ni tampoco puede la sección 9 de la Ley Escolar que se cita, invalidar ese acuerdo, pues aún cuando asumamos que no se llenaron para la celebración de la sesión en que se tomó, los requisitos que exige dicha sección 9, no por eso dejó dicho acuerdo de ser válido. Veamos

lo que nos dice la sección 9 de referencia: "Siempre que el objeto de una sesión de la junta escolar sea el autorizar una contribución ó deu-da para fines escolares, dicha sesión no tendrá fuerza legal para tales fines, á menos que se anuncie previamente su objeto, el lugar y hora de dicha sesión por un período de tiempo que no bajará de treinta días." En manera alguna puede aplicarse esta sección á la ratificación por parte de la junta del contrato que nos ocupa. Esa sección se refiere á aquellos casos en que, por ejemplo, sea necesario para el sostenimien-to de las escuelas el imponer una contribución especial ó el reconocer alguna suma de dinero que la junta adeude; pero nunca puede referir-se á la ratificación por parte de una corporación de esta índole de un contrato, si en un principio fué *voidable,* ello se debió á no haberse llenado para su otorgamiento los requisitos de ley. Demos por sentado, sin embargo, que la sección 9 que se cita se refiere á un caso como el de autos, y aún sentando esa hipótesis, nos encontramos con jurispruden-cia que quita todo derecho á la junta demandada. En el caso de 27 L. R. A. se decidió por la Corte Suprema de Vermont que "una junta es-colar es responsable y debe pagar sus servicios á un profesor, que aún tenía un contrato nulo con la junta, á causa de no haberse hecho de acuerdo con una sección de la Ley Escolar parecida á las que nos ocu-pa, se le permitió enseñar sin habérsele puesto objeción alguna." Y esto es lógico: Una corporación al igual que un individuo, no puede repudiar un contrato y obtener sus beneficios; si el contrato es rescin-dible, no debe dormir sobre sus derechos y debe pedir á tiempo su res-cisión; mientras ésta no se obtenga, se está obligado á pasar por él. En el caso de autos, se firmó un contrato que no podía obligar á la jun-ta demandada por ser defectuoso, y si posteriormente se subsanan esos defectos por esa junta, no vé esta corte como en el presente caso pue-de escapar dicha corporación demandada al pago de alquileres deven-gados al amparo del contrato. Pero no queda con esto resuelto este pleito, pues la parte demandada alega también que si hubo ratificación del contrato todavía no adeuda cantidad alguna en concepto de alqui-leres al demandante, porque ese contrato fué rescindido por las partes á fines del mes de agosto de 1905, y para probarnos esa rescisión nos trae al juicio la siguiente prueba: Que en 26 de agosto del citado año de 1905, en ocasión de encontrarse la junta en reunión pública com-pareció ante ella el Sr. Lamboglia citado debidamente, y allí se le hi-cieron por la junta proposiciones acerca del arrendamiento de tres ca-sas de su propiedad, incluyendo en ese arrendamiento la casa cuyos al-quileres dan origen á este pleito. Que el Sr. Lamboglia se incomodó y allí dijo que no quería más tratos ni contratos con la junta y que

desde aquel momento daba por rescindido todo contrato que tuviera con dicha corporación. Que inmediatamente la junta aceptó esta proposición y su presidente así lo dijo al Sr. Lamboglia. La cuestión por resolver es si estas simples manifestaciones orales pudieron rescindir un contrato escrito. La contesta de la corte es negativa. Es regla general que las mismas formalidades que se requieren para la celebración de un contrato se necesitan para su rescisión. Las manifestaciones del Sr. Lamboglia en la sesión del 26 de agosto de 1905 fueron, si existieron, según se desprendió de la prueba en el acto del juicio, manifestaciones de mera protesta y los actos posteriores de la junta y del Sr. Lamboglia así lo demuestran. No existe pues, á juicio de la corte, causa alguna de rescisión que pueda comprenderse en los artículos 1257, y 1258 y siguientes del Código Civil. Poco tenemos que decir en cuanto á la alegación de novación del contrato que nos ocupa. La resolución de la junta escolar de 9 de abril de 1905, resolviendo, que suprimida la escuela industrial se tomaran en arrendamientos para escuelas graduadas la casa que ocupa dicha escuela y otra más del Sr. Lamboglia, por el canon mensual de setenta y cinco dollars, no pudo en manera alguna obligar al Sr. Lamboglia. Aquello fué un acuerdo de la junta que, según la prueba, nunca aceptó el Sr. Lamboglia, por más que se alegue lo contrario en la contestación de la demanda; y la novación, según la ley, debe ser de común acuerdo entre ambas partes contratantes. Lo mismo sucede con aquella otra alegación de la contestación que se refiere á que el demandante nunca realizó acto alguno cerca de la junta demandada tendente á conseguir el cobro de lo que se le reclama, pues se probó en el juicio lo contrario. Hay, pues, una causa de acción.''

La corte municipal, como la corte de distrito después, fallaron el caso á favor del demandante y en contra del demandado. De este último tribunal se interpuso apelación para ante esta Corte. Discutiremos primeramente la cuestión de si hubo algún contrato entre la Junta Escolar de Guayama y el demandante. Se sostiene á favor del apelante que como el contrato de 26 de septiembre de 1904 estaba firmado por tres individuos, no era bajo ningún concepto un contrato de la corporación demandada, sino meramente un contrato entre las personas que lo firmaron y el demandante Lamboglia. No se niega que este documento está firmado por personas que se titulan miembros de la junta. No hay duda alguna de que

es legal la forma del contrato celebrado suponiendo que fuera un contrato entre las tres personas nombradas y el demandante. Es un contrato obligatorio entre estos funcionarios y el demandante, y contiene todos los requisitos del artículo 1228 del Código Civil, que son: Primero, consentimiento de las partes contratantes; segundo, objeto cierto que pueda ser materia de contrato; tercero, causa de la obligación que se establezca. ¿Puede este contrato celebrado en esa forma merecer la consideración de un contrato hecho por la Junta Escolar de Guayama? Hemos visto que en cuanto á su forma el contrato no es nulo. Don Leopoldo Venegas, Don Andrés Rodríguez y Mr. John Zimmerman, eran respectivamente el presidente, secretario y superintendente del distrito escolar.

La prueba demuestra que este contrato fué firmado separadamente por dichos funcionarios y el apelante cita el caso de *Carry Library* v. *Bliss,* 7 L. R. A., 765, al efecto de mostrar que las firmas de la mayoría de una junta de directores obtenidas separadamente en un documento cuando la junta no está en sesión no le dan el carácter de un acta válida de la junta. El apelante cita también el caso de *Honoker* v. *Board of Education,* etc., que se encuentra en el Tomo, 32 L. R. A., p. 403, en el que se sostiene la doctrina de que las firmas de un documento, obtenidas separadamente, no pueden obligar á la junta.

Es suficiente decir que no puede haber duda alguna del principio establecido, de que el contrato de septiembre 26, aunque válido en su forma, no era por sí mismo un contrato de la Junta Escolar de Guayama. Sin embargo, el documento número 4, que se inserta en el récord, bajo la certificación del secretario, muestra que en 20 de octubre de 1904 la junta escolar procedió de la siguiente manera:

"Se acordó aprobar el contrato de arrendamiento de la casa de Don Juan Lamboglia, situada en la calle de los Jardines, esquina á la de Hostos para la escuela industrial, con el canon mensual de cuarenta dollars."

La misma certificación muestra que Rodríguez, Venegas y Zimmermam, que individualmente firmaron el contrato de septiembre, se encontraron presentes en la sesión de octubre, y como hemos dicho antes, eran, respectivamente, secretario y presidente de la junta y superintendente de escuela.

En el caso de *The Union School Furniture Co.* v. *School District No. 60* que se encuentra en el Tomo, 20 L. R. A., 136, se resolvió que un distrito escolar que ha recibido, retenido y usado por un largo período de tiempo ciertos muebles de escuela, comprados para la misma por miembros de la junta escolar del distrito, actuando separadamente, sin que mediara ninguna sesión de la junta, debe estimarse que ha ratificado la compra y debe pagar la propiedad así obtenida para su uso; y la nota sita un número de casos que muestran que una junta escolar puede ratificar un contrato no autorizado.

El caso de *The Bank of Columbia* v. *Patterson*, 7 Cranch, 299, es una autoridad en la materia y de él se deduce que los actos de los agentes de una corporación pueden ser ratificados por la corporación misma. (Véase á este mismo efecto la obra de Dillons, sobre corporaciones municipales sección 463; véanse también los artículos 1277 y 1278 del Código Civil.)

Aparece por lo tanto que el contrato en cuestión en tanto en cuanto no fuera un contrato *ultra vires* (ó sea, que no fuera otorgado con extralimitación de facultades por parte de la junta), ha pasado á ser un contrato de la junta escolar por razón de su ratificación. La casa estaba además ocupada por los demandados para usos de la escuela industrial; y aunque el demandado sostiene que no estaba ocupada, por virtud del contrato de septiembre, no obstante, semejante ocupación es un hecho más que tiende á mostrar la intención de las partes.

Se alega que el contrato de 26 de septiembre no estaba suficientemente identificado por la resolución tomada en octubre, pero esta alegación no puede prosperar toda vez que se hizo

referencia al demandante, á su casa y al nombre de la calle y al importe de la renta.

Sostiene, por consiguiente, el apelante, que la resolución de la junta en abril de 1905 constituye en realidad una novación del contrato.

Se alega que la acción de la junta al arrendar las dos casas fué consentida por Lamboglia, como lo demuestra al hecho de haber recibido una renta por ambas casas. Sin embargo, esta alegación no excluye la idea de que él pueda haber pensado que la junta, por un acto verbal, resolviera tomar también la segunda casa. Una novación debe realizarse por consentimiento claro y mutuo, y la mera aceptación de una renta, sin que mediara expresamente un nuevo arrendamiento, no tiene el efecto de un consentimiento. Se necesita algo más para demostrar que al tomar la resolución de abril se tuvo presente el contrato de septiembre.

Con respecto á la cuestión de rescisión planteada por el demandado, opinamos que la prueba presentada con respecto á la misma es demasiado débil para anular un contrato escriturario.

Se presentó mucha prueba al efecto de mostrar que Lamboglia declaró rescindido el contrato y que la junta aceptó su resolución. No se explicó, sin embargo, á qué contrato se refería. Los hechos subsiguientes, su negativa á aceptar las llaves, y además el hecho de que se propusiera reclamar daños y perjuicios, muestran una intención contraria. No hay nada que muestre que él consintió ó pensó que el contrato que tenía por cinco años fuera anulado, ya por recisión ó ya por novación. Semejante acción le representaba mucha pérdida y ninguna ganancia, y una rescisión debe probarse por actos más explícitos que aquéllos sobre los que el demandado basa sus objeciones á la sentencia de la corte inferior.

Además, la prueba con respecto á este punto, es contradictoria, y en tal caso, habiendo resuelto la corte en contra del demandado no debemos modificar esa resolución, toda vez que

no concurren circunstancias extraordinarias. (Véase la opinión dictada en diciembre 12 de 1906, en el caso de *Gorgonio de Bolívar* v. *Sucesión de Eudaldo Iglesias,* y la dictada en mayo 3 de 1907, en el de *Tony Lowande* v. *Manuel A. García y Otero y Ca.*)

Opinamos como el abogado de la parte apelada, que la sección 9 de la Ley Escolar no tiene aplicación al caso. Según sus términos tiene aplicación á una sesión cuando hay necesidad de levantar fondos por contribución y fines semejantes. Suponiendo otra vez que el contrato estuviera dentro de las facultades de la junta no eran necesarias las formalidades que prescribe la sección 9.

Venimos ahora á considerar la alegación más importante del apelante, ó sea, si el contrato era válido por estar dentro de los límites de las facultades de la junta escolar.

Según la sección 3 de la ley escolar los "electores capacitados de cada municipio elegirán, al verificarse cada elección municipal, tres personas," etc., "los tres directores en dicha forma elegidos constituirán la junta escolar y desempeñarán las funciones de sus cargos por un período de tiempo de dos años que comenzará el día primero de enero subsiguiente á la fecha de su elección y hasta que sus sucesores hayan sido elegidos y entrando en el ejercicio de sus cargos." La sección 7 prescribe:

"Sección 7. Las juntas escolares tendrán á su cargo todos los edificios destinados á escuelas en sus distritos respectivos; tendrán poder bastante para construir, separar, recomponer y mejorar la propiedad escolar, alquilar edificios para fines escolares, proveer los mismos de muebles adecuados, emplear porteros para las casas-escuelas, reparar y conservar en buena condición los edificios adyacentes necesarios, pagar el alquiler de viviendas para maestros, y conservar en buena condición las casas-escuelas en sus distritos respectivos. Tendrán bajo su guarda y mantendrán en buen estado todas las casas-escuelas que hayan sido construídas por el Gobierno Insular Americano, aún cuando el título de propiedad de las mismas pertenezcan al Pueblo de Puerto

Rico, por el tiempo que dicho edificio se use para fines escolares, y en general, desempeñarán los deberes que el Comisionado de Instrucción exija, de acuerdo con las Leyes Escolares.''

Según la sección 4, es evidente que las juntas escolares son personas artificiales creadas por la ley, y son elegidas de la misma manera que los demás funcionarios municipales, y los principios más generales aplicables á las corporaciones municipales regulan tales juntas escolares. (*Whitney* v. *Stone,* 111 Mas., 370.) Según la sección 7, tienen amplia autoridad, y entre otras cosas, se les da la facultad de arrendar edificios para fines escolares. Por consiguiente, no habiendo ninguna otra limitación en la ley, parece que la facultad de arrendar incluye el derecho de alquilar un edificio por un período de tiempo razonable y para fines escolares.

Sin embargo, el apelante basa su principal alegación en la sección 21 de la Ley Escolar. La sección 21, según fué enmendada cuando este contrato tuvo efecto. Leyes de 1904, página 56, prescribían lo siguiente:

"Sección 2. La sección 21 de la Ley Escolar Compilada, quedará redactada en la forma siguiente: ''Las juntas escolares satisfarán puntualmente todas sus obligaciones y por ningún concepto contraerán deudas ni obligaciones que excedan de sus ingresos ó que no estén consignadas en sus presupuestos. Antes del 1 de agosto de cada año harán un informe estadístico de sus transacciones financieras y de cualquier otra clase, y someterán el mismo al Comisionado de Instrucción. Este informe contendrá un estado completo de los ingresos y de los gastos de la junta escolar. Las cuentas de la Junta Escolar y del tesorero de dicha junta serán examinadas y consideradas en todos los respectos de la misma manera que las cuentas de los demás funcionarios municipales. Estas cuentas se llevarán en los libros que para la contabilidad preparará y facilitará el Comisionado de Instrucción, y ninguna suma podrá ser empleada mientras no se dé entrada en estos libros á la partida correspondiente á la operación llevada á cabo. Estos libros de contabilidad serán sometidos al examen y aprobación del Comisionado de Instrucción el día veinte ó antes del día veinte de los

meses de julio, octubre, enero y abril de cada año, quien los devolverá
por medio del superintendente del distrito, dentro del plazo de diez
días contados desde aquél en que fueron recibidos.''

En la sección 63, enmendada por la Ley aprobada en marzo
10, 1904, página 66 de las Leyes de 1904, se prescribe:

''Sección 63. Para el año económico que empieza en primero julio de
mil novecientos cuatro, y termina en treinta de junio de mil novecientos
cinco, y para cada año económico siguiente y con el fin de aumentar
los recursos de las juntas escolares, los ayuntamientos podrán imponer
una contribución sobre la propiedad que se llamará ''contribución es-
colar,'' y que no podrá exceder de un décimo por ciento del valor de la
propiedad mueble é inmueble del respectivo municipio, con arreglo á
la tasación hecha por el Tesorero de Puerto Rico para imponer y cobrar
la contribución escolar sobre la propiedad.''

Esta ley fué enmendada otra vez en 1905, haciéndose exten-
siva á bienes muebles para los efectos de la contribución.
(P. 97, de las Leyes de 1905.)

Disposiciones semejantes á la sección 21 han sido incorpo-
radas en las constituciones ó en los estatutos de muchos de
los Estados de los Estados Unidos. Han sido interpretadas
de varios modos por las distintas cortes. Algunas veces se
ha resuelto que cuando, por virtud de un contrato, una per-
sona ha de hacer algo de modo continuo, que la corporación
municipal debe pagar á razón de plazos mensuales ó anuales,
debe prestarse consideración á la suma total que dicho contrato
envuelva, y si esa suma total objeto del contrato excede del
presupuesto municipal de cualquier año, tal contrato está
fuera de las facultades de la junta. Otras autoridades han
resuelto que cuando el objeto del contrato es obtener gas ó
luz ó algún artículo corriente y necesario, para uso de la mu-
nicipalidad, la obligación contractual deberá entenderse en el
sentido de ser aplicable á un año determinado, y si la cantidad
que ha de pagarse en ese año, ó la cantidad ya convenida, no
excede de los ingresos de ese año, entonces un contrato de esa

naturaleza podría sostenerse. Las resoluciones han resuelto también el punto referente á la clase de contratos que constituirían una deuda dentro de los términos de disposiciones semejantes, y frecuentemente se ha sostenido que cuando algo queda por hacer por el contratista ó por la otra parte contratante, no hay deuda alguna que obligue á la comunidad hasta que el servicio ó acto particular que ha de ejecutarse por dicha otra parte se haya realmente ejecutado. En el caso *Walla Walla City* v. *Walla Walla Water Co.,* que se encuentra en el tomo 172 United States, p. 1, el Tribunal Supremo de los Estados Unidos interpretando disposiciones del carácter de las aquí referidas, dice:

"Hay considerable conflicto entre las autoridades con referencia á la correcta interpretación de tales limitaciones, cuando se hallan establecidas en las cartas municipales. No puede haber duda alguna de que si la ciudad se propuso comprar completamente ó establecer un sistema propio de acueducto, la sección debe tener aplicación, aunque se hubieran expedidos bonos que han de ser pagados en el futuro. (*Buchanan* v. *Litchfield,* 102 U. S., 278; *Culbertson* v. *Fullon,* 127 Illinois, 30; *Coulson* v. *Portland,* Deady, 481; *State* y. *Atlantic City,* 49 N. J. Law, 558; *Spilman* v. *Parkersburg,* 35 W. Va. 605; *Beard* v. *Hopkinsville,* 95 Ky. 239). Hay también un respetable número de autoridades en el sentido de que la limitación ha de aplicarse también al caso en que la ciudad conviene en pagar una cierta suma anual, si el montante total que ha de ser pagado, por virtud de dicho convenio, excediere de la suma que como límite señala la carta. (*Niles Water Works* v. *Niles,* 59 Mich., 311; *Humphreys* v. *Bayonne,* 55 N. J. Law, 241; *Salem Water Co.* v. *Salem,* 5 Oregon, 29).

"Pero creemos que el peso de autoridades, así como el de la razón, favorece la interpretación más liberal de que una corporación municipal puede contratar para el suministro de agua, gas, ó necesidades semejantes, y puede estipular el pago de una renta anual por el gas ó agua suministrada cada año, á pesar de que el total de los plazos durante la existencia del contrato exceda el importe de la deuda limitada por la carta. Hay una diferencia entre una deuda y un contrato por el que se incurra en una deuda futura, á no ser que la parte contratante cumpla el convenio del cual pueda resultar la deuda. Hay también una diferencia entre el último caso y aquel en que se crea una

deuda inmediatamente, como la expedición de bonos de ferrocarriles, ó la construcción de mejoras públicas, aunque tal deuda sea pagadera á plazos futuros. En un caso no se crea la deuda hasta que la causa ha sido cumplida; en el otro caso la deuda se crea en el momento, posponiéndose solamente la época del pago.

"En el caso que estamos considerando la renta anual no constituía una deuda á los efectos de la carta hasta que el agua necesaria para el año hubiera sido suministrada. Si la compañía hubiera dejado de suministrarla, la renta no hubiera sido pagadera, y aunque el contrato original establecía la creación de una deuda, era solamente mediante la condición de que la compañía cumpliera sus propias obligaciones. (*Wood* v. *Partridgell*, Mass., 488-493). Una interpretación diferente pudiera ser desastrosa para los intereses de la ciudad, puesto que claramente se la impediría comprar ó establecer su propia planta, cuyo valor excediera de la cantidad limitada, y se la obligaría á contratar con alguna compañía que estuviera dispuesta á incurrir en los grandes gastos necesarios para construir un acueducto mediante la promesa de que la ciudad pague su renta anual." (*Smith* v. *Dedham*, 144 Mass., 177; *Crowder* v. *Sullivan*, 128 Ind., 486; *Saleno* v. *Neosho*, 127 Missouri, 627; *Valparaíso* v. *Gardner*, 97 Ind., 1; *New Orleans Gas Light Co.* v. *New Orleans*, 42 La. Ann., 188; *Merrill Railway & Lighting Co.* v. *Merrill*, 80 Wis., 358; *Weston* v. *Syracuse*, 17 N. Y., 110; *East St. Louis* v. *East St. Louis Lighting Co.*, 98 Ill., 415; *Grant* v. *Davenport*, 36 Ia., 396; *Lott* v. *Waycross*, 84 Ga., 681; *Burlington Water Co.* v. *Woodward*, 49 Iowa, 58.

En el caso de *Wood* v. *Partridge* citado por el Tribunal Supremo la Corte de Massachusetts, dijo lo siguiente:

"Un contrato por el que se convenga el pago de una renta trimestral no constituye una deuda con respecto á la renta, ni ésta puede ser legalmente demandada, hasta que no llegue la época estipulada para el pago. Puede que la renta nunca llegue á estar vencida. El arrendatario puede abandonar la finca con el consentimiento del arrendador; ó él puede traspasar su contrato con ese consentimiento con el fin de librarse del pago; (hay que fijarse en que el demandado alega que alguna de estas contingencias han tenido lugar), ó él puede ser desposeído, por virtud de un título que sea superior al de su arrendador; en cualquiera de cuyos casos él quedará librado de las obligaciones que su contrato le impone."

En este caso se discutía la cuestión de si Partridge, que era fideicomisario ó administrador de Wood, podía ser responsable del pago de cualquier renta que no hubiere estado vencida en la época en que el mandamiento le fué notificado. La corte resolvió que nó, porque después de esa época la renta estaba sujeta á contingencias.

En el caso de *Lamar Water & Electric Co.* v. *City of Lamar,* que se encuentra en el tomo 32, L. R. A., pág. 171, el apelante cita otros casos en su alegato, al efecto de mostrar que en un contrato para suministro de artículos ó para ejecución de servicios, la suma convenida no constituye una deuda en la acepción común y general de la palabra.

En el caso de *Electric Co.* v. *City of Dallas* (23 Tex. Civ. Rep., p. 327), la corte se expresa así:

"Habiéndose estipulado en el contrato que estamos considerando el pago de una renta por luz que ha de suministrarse para usos de la ciudad, cuyo pago ha de hacerse solamente una vez prestado el servicio que se ha contratado, como la renta anual del mismo no excede de la cantidad que el consejo municipal está legalmente autorizado para cobrar y presupuestar en cada año, ella no constituye una deuda á los efectos de la disposición constitucional que prohibe la creación de una deuda, sin que al mismo tiempo se provea para su pago."

En este caso se expresa que la distinción entre contratos de la naturaleza del que en este pleito se discute y aquellos que crean una deuda para cuyo pago ha de proveerse al mismo tiempo de su creación, se encuentra perfectamente definida por el Tribunal Supremo de los Estados Unidos en el caso de *City of Walla Walla* v. *Water Co., supra.*

Con respecto á este particular el Tribunal Supremo de Missouri, en el caso de *Lamar Water & Electric Co.* v. *Lamar, supra,* expresa lo siguiente:

"Precedentes de otros Estados muestran algún conflicto sobre este punto. Pero creemos que el Juez Dillon en su última obra sobre corpo-

raciones municipales, ha formulado la regla correcta en los siguientes términos:

"Disposiciones constitucionales de Iowa, Illinois, Indiana y Pennsylvania, á que hemos hecho referencia, proveen que una corporación puede celebrar un contrato (por lo menos para obtener artículos necesarios), cuya duración sea por una serie de años, por virtud del cual pueda surgir una obligación de pagar de año en año á medida que el artículo, objeto del contrato, se suministre; en semejante caso, la suma total que en definitiva pueda llegar á deberse, no constituye una deuda á los efectos de las cláusulas prohibitivas de la constitución. Pero con el fin de determinar si la corporación, por virtud de tal contrato, está traspasando los límites que se le han fijado debe tomarse en consideración solamente la cantidad que pueda vencer dentro de un cierto año ú otro período de tiempo; y si los ingresos por ese año ó período son suficientes, para pagar dicha cantidad, después de satisfecho el pago de los otros gastos, no se ha incurrido en deuda alguna á los efectos de la prohibición constitucional."

En el tomo 59 de L. R. A. se encuentran dos casos que se refieren á esta cuestión y en la página 610 se encuentra una lista de autoridades con respecto á lo que no constituye una deuda. *McGillivray* v. *Joint School District* No. 1, 58 L. R. A., página 100, es también un caso que se refiere á este punto.

Es evidente, por consiguiente, que un contrato por un período de años, por el que se estipule el suministro de agua, gas y otros artículos semejantes, puede ser sostenido y lo mismo un contrato sobre arrendamiento de un edificio para fines escolares. Aquí se alega, sin embargo, que una junta escolar no tiene facultades para hacer un contrato que obligue á sus sucesores, y el apelante cita dos casos que vienen en apoyo de su alegación. En el caso *Honaker* v. *The Board of Education, etc.* (32 L. R. A., p. 413), se trataba de un contrato para la compra de ciertos enseres ó utensilios, la mitad de la suma vencida había de ser pagada durante el entonces corriente año y la otra mitad en el año subsiguiente, lo que se resolvió que estaba prohibido por el Código de West Virginia, porque se creaba una deuda distinta. No se probó que los enseres fueran necesarios y el caso envolvía una cuestión

de fraude.   El caso de *Milliken* v. *Edgar County* (18 L. R. A., p. 447), es una autoridad al efecto de establecer que una junta de superintendentes elegida por un año, no tiene derecho alguno, con arreglo á los estatutos de Illinois, para atar las manos de sus sucesores nombrando un portero de un asilo por el término de tres años.   El caso de *Walla Walla. Water Co.,* *supra,* así como otros citados sobre el mismo punto, envolvía necesariamente la cuestión de que las corporaciones municipales pueden hacer contratos que obliguen á sus sucesores.

La Corte de Circuito de Apelación de los Estados Unidos, del 8°. Circuito, tuvo oportunidad de resolver esta cuestión en el caso de *Illinois Trust and Savings Bank* v. *Arkansas City,* que se encuentra en el tomo 34, L. R. A., 518, y en la página 524, la corte dice:

"Pero se insiste que este contrato está fuera de las facultades de esta ciudad, y es nulo porque concede á la compañía de agua el derecho de usar las calles de la ciudad y en él se promete el pago de una renta por las bocas de agua ó llaves de tubería, por el término de 20 años. La proposición en que se funda esta alegación descansa en el principio de que los miembros del consejo municipal son fideicomisarios ó administradores del público; ejercen facultades legislativas; y que ellos no pueden hacer concesión ni celebrar contrato alguno que obligue á la ciudad por un término mayor que el de sus cargos, porque semejante acción limitaría las facultades legislativas de sus sucesores y les privaría del derecho de ejercerlas sin limitación alguna, según lo demanden las exigencias de la época.   Hay dos razones que impiden que esta proposición pueda ser mantenida con éxito en este caso:

"Primero, porque hace caso omiso de la diferencia establecida entre las facultades gubernamentales ó públicas de una municipalidad y sus facultades administrativas ó de negocio, y equivocadamente pretende aplicar al ejercicio de las últimas, una regla que es aplicable solamente al ejercio de las primeras.   Una municipalidad tiene dos clases de facultades: la una, legislativa, pública, gubernamental en el ejercicio de la cual es soberana y gobierna á su pueblo; la otra, administrativa, casi privada, conferídale, no con el objeto de gobernar á su pueblo, sino para el provecho particular de los habitantes de la ciudad, y de la misma ciudad como una entidad legal.   En el ejercicio de las facultades que corresponden á la primera clase, ha de gobernarse

por la regla que aquí se ha invocado. En su ejercicio, gobierna á su pueblo y está obligada á trasmitir, sin alteración alguna sus facultades de gobierno á sus sucesivos funcionarios. Pero en el ejercicio de las facultades que corresponden á la última clase no ha de gobernarse por semejante regla, porque está actuando y contratando para el beneficio particular de sí misma y de sus habitantes, y puede ejercer las facultades administrativas que le han sido conferidas de la misma manera que un individuo ó corporación particular, y en su ejercicio, ha de gobernarse por las mismas reglas que gobiernan á este último. *Dill. Municipal Corporation,* 3rd ed. section 66, y los casos que se citan en la nota. Cuando la ciudad contrata para la construcción de un acueducto con el fin de suministrarse de agua y de suministrarla á sus habitantes, no ejerce sus facultades legislativas ó gubernamentales, sino sus facultades administrativas. El objeto de tal contrato no es el de gobernar á sus habitantes, sino el de obtener un beneficio particular para la ciudad misma y sus ciudadanos. (*I Dill. Mun. Corp.,* sec. 27; *Cincinatti* v. *Cameron,* 33 Ohio Stat., 336, 337; *Safety Insulated Wire & Cable Co.* v. *Baltimore, supra,* y los casos que en el mismo se citan.

De este punto trata también el caso de *McBean* v. *Fresno* (Cal., 31 L. R. A., 794). Todos estos casos se han dictado en relación con el estatuto particular invocado y la naturaleza del contrato: Cuando el contrato determinado, no sea sobre alguna cosa necesaria ó cuando el término sea injustificadamente extenso, tomando en consideración la naturaleza de la corporación ó cuando hay alguna cuestión de fraude, tal contrato no podrá sostenerse.

Durante el juicio en la corte de distrito, Mr. John Zimmerman, testigo del demandado, declaró que la única casa que había en Guayama antes de celebrar el contrato que pudiera servir para la escuela Industrial, era la casa del Sr. Lamboglia. Como medida de protección en este sentido, la junta estipuló en el contrato que si el Comisionado de Instrucción estableciera un edificio para la escuela industrial, el contrato se consideraría rescindido, insertándose también en el contrato una cláusula que permitía á la junta hacer cambios en el edificio para fines de la Escuela Industrial. En estas condi-

ciones debemos sostener que el arrendamiento de un edificio por la junta escolar por un período de cinco años en una ciudad del tamaño de la de Guayama, no constituye un ejercicio injustificado de sus facultades.

El récord de este caso presenta los hechos de un modo muy poco satisfactorio. Hay un pliego de excepciones en los autos, pero en él se han incluído las notas del taquígrafo y todos los documentos presentados durante el juicio. El juez pudo haber aprobado y firmado de la misma manera las notas taquigráficas. Debía haberse presentado ó una exposición del caso en forma narrativa, ó un pliego de excepciones conteniendo la prueba en forma narrativa. Hemos tenido la oportunidad de hacer comentarios sobre estos puntos en los casos de *Eurípides López* v. *The American Railroad Co.*, resuelto en 28 de junio de 1906 y en el de la *Sucesión de Eudaldo Iglesias* v. *Gorgonio de Bolívar*, resuelto en 20 de diciembre de 1906.

Por las razones expuestas anteriormente, se sostiene la resolución de la corte de distrito que dictó sentencia á favor del demandante, desestimando la reconvención.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, Figueras y MacLeary.